435 So.2d 1003 (1983)
LOUISIANA ASSOCIATION OF PLANNING AND DEVELOPMENT DISTRICTS; Regional Planning Commission For Jefferson, Orleans, St. Bernard and St. Tammany; Capital Economic Development District Council, Inc.; Capital Regional Planning Commission; Evangeline Economic Development District; Imperial Calcasieu Regional Planning & Development Commission; Kisatchie-Delta Regional Planning & Development District; North Delta Regional & Development District, Inc. and Gerald Mouton
v.
Governor David C. TREEN and the State of Louisiana.
No. 83-CA-0207.
Court of Appeal of Louisiana, First Circuit.
May 5, 1983.
*1004 Ignatz Kiefer, New Orleans, for plaintiffs.
Ray Mongrue and James Hrdlicka, Atty. General's Office, Baton Rouge, for defendants.
Before EDWARDS, WATKINS and SHORTESS, JJ.
EDWARDS, Judge.
Plaintiffs, the Louisiana Association of Planning and Development Districts, the various planning and development districts which belong to that organization and one private citizen, brought this suit for declaratory judgment and writ of mandamus against Governor David C. Treen and the State of Louisiana.
The following facts gave rise to plaintiffs' suit. The 1982-83 Executive Budget for the State of Louisiana submitted by Governor Treen recommended a $1,000,000.00 appropriation to the Louisiana State Planning Office under the category of "Other Charges." This sum was designated for distribution to the various planning and development districts which are plaintiffs herein. This recommended appropriation was omitted from the General Appropriations Bill submitted in the Louisiana House of Representatives. However, the House of Representatives amended that bill by adding a $1,000,000.00 appropriation to the Department of Urban and Community Affairs ("DUCA") for distribution to the districts. That amendment was in the form of a line item which contained both the $1,000,000.00 appropriation and a formula for distributing the money to the districts. When the General Appropriations Bill reached the Senate Finance Committee it was again amended. The $1,000,000.00 DUCA appropriation, designated for the districts, was shifted to the "Other Charges" section of the DUCA appropriation, raising the total of that section to $35,204,733.00. However, the funding formula language of the former line item was retained as a separate item. The General Appropriations Bill was in this form when it was sent to Governor Treen. On July 10, 1982, the governor signed the General Appropriations Bill, which became Act 13 of 1982. The governor vetoed the item which contained the *1005 formula for distributing the $1,000,000.00 to the districts. He did not, however, veto the "Other Charges" category of the DUCA budget, which included the $1,000,000.00 appropriation.[1] On October 22, 1982, Governor Treen issued Executive Order No. DCT 82-23 which provides, in pertinent part, as follows:
"NOW, THEREFORE, pursuant to the authority granted me by R.S. 39:55, I hereby prohibit the allotment and expenditure of $1,000,000 by the Department of Urban and Community Affairs to the Economic Development Districts."
Plaintiffs brought this action, seeking a declaratory judgment that the governor's veto and freeze order were null and void. They also requested a writ of mandamus ordering the defendants to distribute the $1,000,000.00 to the various districts. Defendants filed exceptions of no right of action, lack of procedural capacity and no cause of action, which were referred to the merits by the trial court.
At the conclusion of trial, the trial court overruled defendants' exceptions and rendered judgment in favor of plaintiffs on the merits. The court declared the governor's attempted veto of the appropriation for the districts unconstitutional and without effect. Additionally, it declared Executive Order No. DCT 82-23 illegal, null and void. Finally, the trial court issued the requested writ of mandamus, ordering defendants to distribute the $1,000,000.00 to the districts pursuant to the funding formula contained in the General Appropriations Act. Defendants' motion for new trial with respect to the issuance of mandamus was granted and the trial court rendered a second judgment denying plaintiffs' request for mandamus.
Defendants have appealed the district court's judgment. They assert that the district court erred in overruling their various exceptions, and declaring the governor's attempted veto invalid and in declaring Executive Order No. DCT 82-23 to be null and void. Plaintiffs have also appealed, contending that the trial court erred in refusing to issue the requested writ of mandamus.
We pretermit discussion of the trial court's rulings with respect to defendants' exceptions and the constitutionality and validity of the governor's veto, because we conclude that the trial court's ruling with respect to the executive order was erroneous and because our ruling with respect to that issue will terminate this litigation. Assuming, arguendo, that the exceptions were properly denied and that the court was correct in finding the governor's veto unconstitutional and of no effect, we conclude that the governor had the power to block distribution of the $1,000,000.00 to the districts by way of executive order.
Plaintiffs contended, and the trial court held, that Executive Order No. DCT 82-83 was invalid because it violated LSA-R.S. 39:55. That statute empowers the governor to take certain action in order to prevent deficit spending during the course of a fiscal year. LSA-R.S. 39:55 provides, in pertinent part, as follows:
"If at any time during the fiscal year, the governor should find or the Legislative Budget Committee or the commissioner of administration should report to him, that the receipts of the treasury are falling short or appear likely to fall short of the revenue estimates for the fiscal year and that a cash deficit is likely to be incurred, the governor shall have full power and authority to reduce all allotments then in force as well as future requests for allotments of appropriations. In order that the expenditures from appropriations made in the general appropriations act for the remainder of the year will not exceed receipts of the treasury, the governor may direct that there be across-the-board cuts in total allotments of appropriations for the remainder of the year or for any monthly or quarterly period of the fiscal year, or he *1006 shall have authority to issue executive orders in the form of freeze orders prohibiting the expenditure of funds for specified items or purposes, or the governor may issue executive orders in a combination of any of the foregoing means of preventing the occurrence of a cash deficit in the state treasury.
"If on the basis of information supplied by the commissioner of administration that the state's revenues appear to be less than the authorized appropriations or expenditures, or if it should appear that the revenues may be less than the amount necessary to pay the appropriations contained in the general appropriations act, the governor is empowered to take such steps as deemed necessary to prevent the occurrence of a cash deficit.
"Pursuant to the provisions of this Section, the governor shall have authority within any month of the fiscal year to direct the Division of Administration to disapprove warrants drawn upon the state treasury which are in excess of amounts approved by the governor pursuant to provisions of this Section. Pursuant to the authority contained in this Section, the governor may order reduction in warrants drawn upon the treasury both as to sums appropriated by the general appropriations act as well as pursuant to any statutory dedications of funds of revenue of the state from whatever source derived.
"Upon direction by the governor, the Division of Administration shall not approve warrants and the state treasurer shall not honor warrants drawn upon the state treasury in excess of the amounts approved by the governor, and all warrants approved by the Division of Administration and paid by the state treasurer in conformity with the provisions of this Section shall conform to the executive orders of the governor which may be issued pursuant to this Section.
"Before any such reduction to any budgetary unit can exceed ten percent of the amount appropriated to that unit, such excess reduction must be approved by a majority of the legislature by certified mail ballot sent out by the interim emergency board with return receipt requested."
The statute provides that any reduction of funds to a budgetary unit which exceeds ten percent of the amount appropriated to that unit must have legislative approval. The trial court held that Executive Order No. DCT 82-23 was invalid because it exceeded that ten percent limitation.[2]
LSA-R.S. 39:55 speaks in terms of a "budgetary unit." The "budgetary unit" which was to receive the $1,000,000.00 in question is DUCA. LSA-R.S. 39:2(7). The total appropriation for DUCA under Act 13 of 1982 was $37,352,621.00. Ten percent of that amount is $3,735,262.10. Governor Treen's executive order clearly did not order a reduction of a sum in excess of that amount.
However, the trial court held that only approximately six and one-half million dollars *1007 of the funds appropriated to DUCA should be considered in calculating the ten percent limit since $30,768,976.00 of the funds appropriated were federal funds.[3] The court held that the ten percent limitation of LSA-R.S. 39:55 must be calculated with regard only to state generated funds appropriated to a budgetary unit. Since the $1,000,000.00 reduction ordered by Governor Treen was greater than ten percent of the state generated funds appropriated to DUCA, the court concluded that the order violated LSA-R.S. 39:55 and was, therefore, null and void.
We conclude that the trial court erred in holding that funds from federal sources should not be included when calculating the ten percent limitation of LSA-R.S. 39:55. As noted above, that statute prohibits reductions to any "budgetary unit" greater than "ten percent of the amount appropriated to that unit." The statute draws no distinction between the sources of the appropriated funds for purposes of calculating the ten percent limitation. Funds derived from federal sources should be included when calculating the ten percent limitation of LSA-R.S. 39:55.
Support for this conclusion is found in other statutes dealing with public finance. LSA-R.S. 39:2(2) defines "appropriation" as follows:
"`Appropriation' means an authorization by the legislature to a budget unit to expend from public funds a sum of money, for purposes designated, under the procedure prescribed in this Chapter."
LSA-R.S. 39:84 A provides:
"No state agency shall make expenditures of any federal funds, whether such funds are advanced prior to expenditure or as reimbursement, unless such expenditures are made pursuant to specific appropriations by the legislature."
These statutes demonstrate that federal funds can only be made available to a budgetary unit by way of an appropriation of the legislature.
Plaintiffs argue that LSA-R.S. 39:55 is concerned with the situation where state revenues fall below what was anticipated and that the governor should be limited to making a ten percent reduction in state generated revenues appropriated to a budgetary unit. We agree that the intent of that legislation is to enable the governor to reduce state expenditures when state revenues decline during the course of a fiscal year. However, we also believe that the ten percent limitation provision was intended to insure that each budgetary unit is assured of receiving ninety percent of its appropriated funding unless the members of the legislature deem otherwise. Thus, the statute guarantees that the governor will spread any needed budget reduction out over a number of units. The mere fact that a portion of a budgetary unit's funding comes from federal sources should not serve to prevent the governor from cutting its budget in a proportion equal to the cuts which he can make in budgetary units which receive no federal funds.
We therefore hold that the use of the term "amount appropriated" encompasses funds derived from federal as well as state sources. As noted above, the total appropriation to DUCA in the 1982-83 General Appropriations Act was $37,352,621.00. The $1,000,000.00 reduction ordered by Executive Order No. DCT 82-23 did not exceed ten percent of the amount appropriated to that budgetary unit.[4] Thus, Executive *1008 Order No. DCT 82-23 did not violate the provisions of LSA-R.S. 39:55 and it is therefore valid.
For the foregoing reasons, the judgment of the district court is reversed and judgment is hereby rendered in favor of defendants, Governor David C. Treen and the State of Louisiana, dismissing plaintiffs' suit at plaintiffs' cost.
REVERSED AND RENDERED.

 APPENDIX
H. B. NO. 350
 EXPENDITURE
ITEM SOURCE CATEGORY
14-03-00 OFFICE OF EMPLOYMENT SECURITY (1,731)
 FOR:
 Salaries Continuing $ 33,544,308
 Other Compensation 215,308
 Related Benefits 4,672,951
 Operating Expenses 8,767,796
 Professional Services:
 Accounting & Auditing 650,000
 Management Consulting 125,000
 Legal 35,000
 Other Charges 71,221,662
 Acquisitions & Major Repairs 1,093,000
 FROM:
 Federal Funds $120,325,025
 ____________
 TOTAL $120,325,025
 ============
14-04-00 LOUISIANA WORKMEN'S COMPENSATION SECOND INJURY BOARD (5)
 FOR:
 Salaries Continuing $ 110,986
 Other Compensation 1,432
 Related Benefits 14,516
 Operating Expenses 26,516
 Acquisitions & Major Repairs 1,128
 FROM:
 State General Fund by:
 Fees and Self-Generated
 Revenues $ 154,578
 __________
 TOTAL $ 154,578
 ==========
 SCHEDULE 15
 DEPARTMENT OF URBAN AND COMMUNITY AFFAIRS
15-01-00 DEPARTMENT OF URBAN AND COMMUNITY AFFAIRS (74)
 FOR:
 Salaries Continuing $ 1,263,489
 Other Compensation 22,945

*1009
 Related Benefits $ 166,979
 Operating Expenses 528,056
 Professional Services:
 Audit 23,500
 Legal Services 1,100
 Consultants for Head Start,
 Child Development, and
 HUD Programs 46,215
 Professional Travel 3,000
 Other Charges 35,204,733
 Acquisitions and Major Repairs 92,604
 FROM:
 State General Fund $ 4,183,645
 State General Fund by:
 Interagency Transfers 2,400,000
 Federal Funds 30,768,976
 ____________
 TOTAL $ 37,352,621
 ============
----------------------------------------------------------------------------------
Vetoed July 20, 1982
 Of the funds herein appropriated in "Other Charges",
David C. Treen $1,000,000 shall be payable out of the State General Fund for
 assistance to the planning and development districts, to be
 distributed among such districts on the basis of 30% of said
 funds to be distributed equally among said districts, and 70%
 of said funds to be distributed on per capita basis.
----------------------------------------------------------------------------------
15-02-00 LOUISIANA HOUSING FINANCE AGENCY (6)
 FOR:
 Salaries Continuing $ 123,564
 Other Compensation 13,500
 Related Benefits 17,546
 Operating Expenses 81,736
 Professional Services:
 Audits 5,000
 Legal Services 20,000
 Other Professional Services 15,000
 Acquisitions and Major Repairs 23,654
 FROM:
 State General Fund by:
 Fees and Self-Generated
 Revenues $ 300,000
 __________
 TOTAL $ 300,000
 ==========
15-03-00 GOVERNOR'S COMMISSION ON INDIAN AFFAIRS (3)
 FOR:
 Salaries Continuing $ 51,498
 Other Compensation 2,200
 Related Benefits 6,173
 Operating Expenses 15,357

*1010
 Other Charges $ 60,000
 Acquisitions & Major Repairs 1,432
 FROM:
 State General Fund $ 136,660
 __________
 TOTAL $ 136,660
 ==========
 SCHEDULE 16
 DEPARTMENT OF WILDLIFE AND FISHERIES
16-01-00 OFFICE OF SECRETARY (360)
 FOR:
 Salaries Continuing $ 6,368,403
 Other Compensation 110,747
 Related Benefits 919,375
 Operating Expenses 4,062,102
 Professional Services:
 Medical Services 1,020
 Other Professional Services 5,120
 Other Charges 409,920
 Acquisitions and Major Repairs 1,938,267

NOTES
[1] Pages 72 and 73 of Act 13 of 1982, which contain the appropriations and veto in question, are set out in the attached Appendix.
[2] Defendants contend that the ten percent limitation of LSA-R.S. 39:55 is inapplicable to the instant case. They note that Section 9 of Act 13 of 1982, the General Appropriations Act, contains similar language to LSA-R.S. 39:55, and gives the governor power to prevent deficit spending. They assert that the provisions of Act 13 of 1982 contain no ten percent limitation. That section of the act provides, in pertinent part:

"In order that the expenditures from appropriations made in the general appropriations act for the remainder of the year will not exceed receipts of the treasury, the Governor may direct that there be across-the-board cuts in total allotments of appropriations for the remainder of the year or for any monthly or quarterly period of the fiscal year, or he shall have authority to issue Executive Orders in the form of freeze orders prohibiting the expenditure of funds for specified items or purposes, or the Governor may issue Executive Orders in a combination of any of the foregoing means of preventing the occurrence of a cash deficit in the State Treasury and as provided in R.S. 39:55."
The language "as provided in R.S. 39:55" clearly makes the provisions of that statute, including the ten percent limitation, applicable to the powers granted to the governor by Act 13 of 1982. We also note that the executive order in question states that the governor was acting under the authority granted him by LSA-R.S. 39:55.
[3] The DUCA appropriation was funded from the following sources:

 State General Fund $ 4,183,645
 State General Fund by:
 Interagency Transfers 2,400,000
 Federal Funds 30,768,976

The trial court did not determine whether the ten percent limitation should be calculated solely upon the sum derived from the state General Fund or upon that sum plus the money received from interagency transfers. The court noted that the $1,000,000.00 sum exceeded ten percent of either figure.
[4] Executive Order No. DCT 82-21 earlier ordered a 4.4 percent reduction in the amount of General Fund appropriations for all budgetary units. That reduction, added to the instant $1,000,000.00 reduction still does not exceed the ten percent limitation imposed by LSA-R.S. 39:55.