517 So.2d 818 (1987)
Representative Charles Emile BRUNEAU, Jr., Representative Carl N. Crane, Representative John J. Hainkel, Jr., Representative Charles D. Lancaster, Jr., Representative Edward C. Scogin, Representative Quentin D. Dastuque, Representative Terry W. Gee, Representative Jimmy N. Dimos, Senator Ron Landry, Senator Kenneth E. Osterberger, Louisiana Asphalt Pavement Association, Inc., the Association of General Contractors of Louisiana, Inc., Louisiana Association of General Contractors Highway, Heavy, Municipal-Utilities Chapter, Inc., Louisiana Motor Transport Association, Inc., Louisiana Highway Users Federation, Inc. and Louisiana Good Roads and Transportation Association, Inc.
v.
Edwin W. EDWARDS, Governor of the State of Louisiana, and Thomas D. Burbank, Jr., Treasurer of the State of Louisiana and the State of Louisiana.
No. 87 CA 0235.
Court of Appeal of Louisiana, First Circuit.
April 20, 1987.
*819 A. Edward Hardin, Robert W. Fenet, James B. Doyle, Kathleen Kay and J. Mac Morgan, of Woodley, Barnett, Williams, Finet, Palmer & Pitre, Baton Rouge, for plaintiffs-appellants Representative Charles *820 Emile Bruneau, Jr., Representative Carl N. Crane, Representative John N. Hainkel, Jr., Representative Charles D. Lancaster, Jr., Representative Edward Scogin, Representative Quentin D. Dastuque, Representative Terry W. Gee, Representative Jimmy N. Dimos, Senator Ron Landry, Senator Kenneth E. Osterberger, Louisiana Asphalt Pavement Association, Inc., the Association of General Contractors of Louisiana, Inc., Louisiana Association of General Contractors-Highway, Heavy Municipal-Utilities Chapter, Inc., Louisiana Motor Transport Association, Inc., Louisiana Highway Users Federation, Inc. and Louisiana Good Roads and Transportation Association, Inc.
Charles W. Roberts, Charles L. Patin, T. Michael Landrum and David G. Sanders, Baton Rouge, for defendants-appellees Edwin W. Edwards, Governor of the State of Louisiana, and Thomas D. Burbank, Jr., Treasurer of the State of Louisiana and the State of Louisiana.
Before LOTTINGER, SHORTESS, CARTER, CRAIN and LeBLANC, JJ.
LOTTINGER, Judge.
This is an action for declaratory judgment and injunctive relief regarding certain legislative acts affecting the state's general fund as well as certain dedicated funds.

FACTS
Two distinct groups of plaintiffs instituted the present action. The first group is comprised of senators and representatives of the Louisiana Legislature who sued in their capacity as residents, voters, and taxpayers of the State of Louisiana and as duly elected members of the Legislature during the First Extraordinary Session of 1986.[1] The second group is comprised of various associations of contractors, construction companies, and trade groups[2] which allegedly derive benefits, monetary or otherwise, from the dedicated funds.
Plaintiffs filed the instant suit against Edwin W. Edwards, Governor of the State of Louisiana, and Thomas D. Burbank, Jr., Treasurer for the State of Louisiana. Plaintiffs sought a declaratory judgment with respect to the constitutionality of certain legislation passed by the Louisiana Legislature during the First Extraordinary Session of 1986 and sought to enjoin Edwards and Burbank from withholding appropriations in the Capital Outlay Bill of 1986 (Act 1044 of 1986 Regular Session) and the General Appropriations Bill of 1986 (Act 17 of 1986 Regular Session) and from transferring dedicated funds to the state general fund. Plaintiffs allege that Acts 10 and 38 of the First Extraordinary Session of 1986 are unconstitutional by their violation of provisions of the La. Const. arts. II, § 2, III, § 16, § 20, and VII, § 2. (For the full text of Acts 10 and 38 of the First Extraordinary Session of 1986, see the Appendix to this opinion.)
Defendants filed various exceptions raising objections of unauthorized use of summary process, no right of action, and no cause of action. By way of exception, defendants also questioned whether plaintiffs were entitled to injunctive relief under La. Code Civ.P. art. 3601 and whether the court had the authority to decide the case as it presented nonjusticiable questions.
The matter came before the trial court for a hearing on the rule to show cause why the preliminary injunction should not issue and on the exceptions. The trial court maintained defendants' exceptions raising objections of no cause of action and no right of action and dismissed plaintiffs' suit. The trial court also determined that *821 plaintiffs were not entitled to a preliminary injunction.
Plaintiffs appealed and applied for supervisory writs to this court but were denied. Thereafter, on plaintiffs' motion, an expedited hearing was granted.
On appeal, plaintiffs raise the following issues:
I. Whether Act 10 and Act 38 of the 1986 Extraordinary Session of the Louisiana Legislature are constitutional?
II. Whether plaintiffs have a right of action in the subject matter of this litigation?
III. Whether the petition filed by plaintiffs states a cause of action?
IV. Whether the trial court erred in dismissing plaintiffs' claims "on the merits?"
Defendants answer the appeal, reurging the exceptions raised in the trial court, which the trial court omitted and, for the first time, on appeal, allege that plaintiffs failed to join the Louisiana Legislature as an indispensable party. La. Code Civ.P. art. 641.

RIGHT OF ACTION
Plaintiffs contend that the trial court erred in maintaining defendants' exception raising the objection of no right of action. Plaintiffs reason that, as taxpayers, voters, and residents of the State of Louisiana and as associations of corporations with a more particularized interest, they have the right of action to challenge as unconstitutional certain acts of the 1986 Extraordinary Session, citing Carso v. Board of Liquidation of State Debt, 205 La. 368, 17 So.2d 358 (1944).
Defendants contend that plaintiffs have failed to allege any facts which show a special or peculiar interest in their cause of action which is separate and distinct from that of the public at large. Defendants reason that plaintiffs failed to meet the test enunciated in Louisiana Hotel-Motel Association, Inc. v. Parish of East Baton Rouge, 385 So.2d 1193 (La.1980) and League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441 (La.1980) and, as such, do not have a right of action to institute this litigation.
The trial court found that Carso was inapplicable to the instant case and that the appropriate test is contained in Louisiana Hotel-Motel and League of Women Voters. The trial court then determined that the plaintiffs could not satisfy the test because plaintiffs' petition failed to allege any special or peculiar interest different from that of the public at large. Accordingly, the trial court found that plaintiffs did not have a right of action to institute the suit.
The objection of no right of action relates primarily to whether the particular plaintiff is included, as a matter of law, within the general class in whose favor the law grants the cause of action. Budd Construction Company, Inc. v. City of Alexandria, 401 So.2d 1070 (La.App. 3rd Cir. 1981), writ denied, 404 So.2d 1262 (La. 1981); Curry v. Iberville Parish Sheriff's Office, 378 So.2d 159 (La.App. 1st Cir. 1979).
Under La. Code of Civ.P. art. 681, a plaintiff must have a real and actual interest in the action asserted. In order to have standing, a plaintiff must show an interest in the litigation peculiar to him personally and separate and distinct from that of the general public. League of Women Voters; Schaefer v. Treen, 444 So.2d 188 (La.App. 1st Cir.1983), writ denied, 446 So.2d 315 (La.1984). "Without a showing of some special interest in the performance sought of a public board, officer or commission which is separate and distinct from the interest of the public at large, plaintiff will not be permitted to proceed." League of Women Voters at 447; State ex rel. Schoeffner v. Dowling, 158 La. 706, 104 So. 624 (1925); Bussie v. Long, 286 So.2d 689 (La. App. 1st Cir.1973), writ refused, 288 So.2d 354 (La.1974). "A public right or duty may not be compelled or enforced by a private citizen without a showing of a personal grievance or interest in the outcome." League of Women Voters at 446.
However, in Carso, the Louisiana Supreme Court held that a taxpayer, as *822 such, has a right of action to enjoin a state official or agency from disposing of public funds under authority of a statute which the taxpayer contends is unconstitutional. The court in Carso did not explicitly state that a taxpayer is required to have a special or peculiar interest in the cause of action when the constitutionality of a statute is at issue. The jurisprudence, however, requires the plaintiff show something more than a mere interest as a member of the public at large to justify his standing to challenge the constitutionality of a statute.
Thus, the issue is whether the allegations in plaintiffs' original and first supplemental and amending petitions are sufficient to give them a right of action to challenge the constitutionality of Acts 10 and 38 of the First Extraordinary Session of 1986.

LEGISLATORS
In the original petition, the ten legislators who filed suit alleged their interest in the instant litigation as follows:
Representative Charles Emile Bruneau, Jr., Representative Carl N. Crane, Representative John J. Hainkel, Jr., Representative Charles D. Lancaster, Jr., Representative Edward C. Scogin, Representative Quentin D. Dastuque, Representative Jimmy N. Dimos, Representative Terry W. Gee, Senator Ron Landry, and Senator Kenneth E. Osterberger are residents, voters and taxpayers of the State of Louisiana, duly elected members of the Legislature of the State of Louisiana and were members of that body during the First Extraordinary Session of the Legislature of 1986.
Plaintiffs' petition further alleges that the challenged provisions unconstitutionally confer "legislative power or prerogative" on the governor. La. Const. art. II, § 2. Plaintiffs also assert that the diminution of the individual legislator's voting power has injured the lawmaking powers of the Legislature.
It is the opinion of this court that the individual with the right to assert a challenge to acts that reduce the authority of the legislature is a legislator himself. Plaintiffs are members of the same body (the legislature) whose constitutional authority and duty has been improperly delegated. See, Barnes v. Kline, 759 F.2d 21 (D.C.1985); Kennedy v. Sampson, 511 F.2d 430 (D.C.1974).
Therefore, we find that the named legislators have a right of action to challenge the constitutionality of Acts 10 and 38 of the First Extraordinary Session of 1986, and that the trial court erred in maintaining defendants' exception raising the objection of no right of action as to the members of the Legislature.

OTHER PLAINTIFFS
Although there are numerous plaintiffs with varying interests, the determination that the legislators have a right of action, pretermits the necessity of discussing the other plaintiffs capacity to litigate this suit. Bowsher v. Synar, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986).

NO CAUSE OF ACTION
Plaintiffs contend that the trial court erred in maintaining defendants' exception raising the objection of no cause of action. Plaintiffs reason that the allegations of their petition, when accepted as true as required by law, state a cause of action.
Defendants contend that plaintiffs' petition lacks sufficient allegations of fact to establish a cause of action. Defendants reason that after the removal of the petition's numerous conclusions of law, plaintiffs factual allegations cannot support the conclusions of law asserted.
The trial court determined that the Legislature, in enacting Acts 10 and 38 of the First Extraordinary Session of 1986, "did not effect any constitutional, vested or contractual rights." Accordingly, the court found that plaintiffs failed to state a cause of action and maintained defendants' exception.
The objection of no cause of action raised in a peremptory exception tests the legal sufficiency of the petition. All the allegations of the petition are accepted as true. An objection of no cause of action is *823 sustained if the law affords no remedy to plaintiff under the allegations of his petition. La. Code Civ.P. arts. 927(4) and 931. Hubbs v. Canova, 427 So.2d 875 (La.App. 1st Cir.1982). If a petition states a cause of action on any ground or portion of the demand, the objection of no cause of action must be overruled. Rodriguez v. American Bankers Insurance Company of Florida, 386 So.2d 652 (La.1980).
Plaintiffs petition provides, in pertinent part, as follows:
6.
This transfer of legislative authority to the Governor is in direct violation of the separation of powers clause of the Louisiana Constitution of 1974, Article II, Section 2, which provides that no one of these branches (legislative, executive and judicial) nor any person holding office in one of them, shall exercise power belonging to either of the others. Article II, Section 1 and 2 are set out below:

THREE BRANCHES
"Section 1. The powers of government of state are divided into three separate branches; (sic) legislative, executive, and judicial."

LIMITATIONS OF EACH BRANCH
"Section 2. Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others."
* * *
8.
The Governor is a branch of the "executive department" of the state government within the meaning of the constitutional provision for the division of powers among the legislative, executive and judicial department; furthermore the appropriating of state funds is a "legislative function" as respects to the constitutional provision for division of powers among the legislative, executive, and judicial departments of state government.
9.
Act No. 38 and Act No. 10 which confer upon the Governor the power to make all appropriations the Governor deems necessary out of the General Fund to the several state agencies and to transfer any sum of money, appropriated by the Legislature for one purpose, to any other purpose deemed necessary by the Governor, are unconstitutional as an unlawful delegation of a "legislative function" to the Governor, as the chief of the "executive department." Said Acts are unconstitutional for authorizing the withdrawal of money from the Treasury without a special appropriation made by law. The term "special appropriation" is used in Article III, Section 16 which provides that no money shall be drawn from state treasury except pursuant to a special appropriation, made by an act of the Legislature of a specified sum of money for a specified purpose.
10.
Plaintiffs submit Act No. 10 and Act No. 38 are unconstitutional as these statutes purport to authorize the Governor to transfer money from dedicated funds into the General Fund and then from the General Fund to any of the state agencies without any specific appropriations being made by the Legislature. Act No. 10 and Act No. 38 purport to confer upon the Governor unlimited authority in the matter of transferring money to and from the state's General Fund to any of the agencies of the state and particularly, to take dedicated funds out of the D.O. T.D. Highway and Flood Funds and put them into the State General Fund, and to that end, authorize the Governor to disregard the specific appropriations made by the Legislature, and even to suspend the provisions of any law providing for the appropriation or *824 deposit or expenditure or dedication of public funds, for such length of time as the Governor may in this sole judgment, deem necessary to balance the budget or to meet emergencies, without any guidelines whatsoever.
The separation of powers article is violated if one branch of government or its members exercises power belonging to either of the others. La. Const. art. II, § 2; State ex rel Guste v. Legislative Budget Committee, 347 So.2d 160 (La.1977). The Legislature has absolute control over finances of the state, except as limited by constitutional provisions. The Legislature determines how the branches and the departments of government shall be funded from the public fisc. Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963).[3]
Plaintiffs' petition alleges that, in enacting Acts 10 and 38, the Legislature abdicated its constitutional duty and responsibility and unconstitutionally empowered the governor to fulfill one of its legislative functions.
Accepting as true plaintiffs' allegations of legislative abdication, this court is of the opinion that plaintiffs' petition states a cause of action, and the trial judge was incorrect in maintaining defendants' exception raising the objection of no cause of action.

NON JUSTICIABLE ISSUE
Defendants contend there exist no justiciable issues in this case because the courts should not "step in and substitute their judgment for that of the legislative and executive branches" in the budget process. We disagree. The determination of whether the Legislature has acted within, rather than outside, its constitutional authority must rest with the judicial branch of government.

INDISPENSABLE PARTY
By answer to the appeal, defendants have filed the peremptory exception raising the objection of nonjoinder of an indispensable party. La. Code Civ.P. art. 927(3). Defendants argue that since this suit challenges an action by the Legislature and the result will directly affect the authority of the Legislature in the appropriation process, the Legislature is necessarily an indispensable party. We disagree.
La. Code Civ.P. art. 1880 requires that the attorney general be served with a copy of the proceeding when the constitutionality of a statute is at issue. This was done, and the attorney general or his representative participated in this proceeding. La. Const. art. IV, § 8 provides that the attorney general "shall be the chief legal officer of the state."
Assuming arguendo the Legislature has an interest, in requiring that the attorney general be served with a copy of the proceeding, the Legislature has protected its interest even if it is not a named party. Thus, the Legislature is not an indispensable party to this proceeding.

ENTITLEMENT TO A PRELIMINARY INJUNCTION
Plaintiffs contend that the trial court erred in recalling the rule previously issued and in not issuing a preliminary injunction. Plaintiffs reason that the preliminary injunction should have been granted since Acts 10 and 38 of the First Extraordinary Session of 1986 are unconstitutional.
Defendants contend that injunctive relief is not available under the facts of this case, citing La. Code Civ.P. art. 3601.
Because of this court's resolution of the constitutional issues herein, we pretermit any further discussion of this issue.

*825 CONSTITUTIONALITY OF ACTS 10 AND 38
Plaintiffs assert two constitutional challenges against the acts in question: (1) that both acts were procedurally defective in failing to comply with the requirements of La. Const. art. III, § 20, suspension of laws and (2) that both acts were unconstitutional delegations by the Legislature of its exclusive authority to appropriate funds of the public fisc.

SUSPENSION
Plaintiffs rely for their defective procedure argument on the fact that the challenged acts were enacted and introduced as house bills rather than resolutions, citing La. Const. art. III, § 20, which they argue requires suspension of laws by resolution.
Suspension is defined as a "temporary stop" and operates "to prevent its [statute's] operation for a time." Black's Law Dictionary 1616 (4th ed. 1957).
We need not determine whether La. Const. art. III, § 20 requires suspension by resolution as argued by plaintiffs, because we conclude that the Legislature has not acted to suspend any prior enactments dedicating funds. The underlying premise of plaintiffs' argument is that the use of dedicated funds for other than its specified purpose is a suspension. However, we know of no constitutional provision, nor has any been cited, which would preclude the Legislature, by majority vote, from appropriating dedicated funds to purposes other than that specified in the act of dedication. Thus, this assignment of error lacks merit.

DELEGATION OF LEGISLATIVE AUTHORITY
The second argument advanced by plaintiffs asserts an unconstitutional delegation of legislative authority. Plaintiffs contend that one component of legislative power is the authority and duty to appropriate funds from the public fisc, citing La. Const. art. III, § 16; Woodard v. Reily. They further argue that La. Const. art. II mandates the complete and absolute separation of powers among the three branches of state government.
Louisiana's constitution, as does the United States Constitution, provides for a separation of powers among the three branches of government: legislative, executive, and judicial. La. Const. art. II; U.S. Const. arts. I, II, and III. However, the United States Constitution and the Louisiana Constitution differ in that the state charter's provisions are, unlike its federal counterpart, not grants of power but rather limitations on the plenary power of the people exercised through the legislature. New Orleans Firefighters Association v. Civil Service Commission of City of New Orleans, 422 So.2d 402 (La.1982); Hainkel v. Henry, 313 So.2d 577 (La.1975). Thus, a legislative action may not be invalidated as unconstitutional unless a particular constitutional provision provides for such a prohibition. The absence of such a constitutional preclusion creates a presumption that those acts of the legislature are constitutional. State v. Union Tank Car Company, 439 So.2d 377 (La.1983).
As a general rule, "legislative power, conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or to any other body or authority." City of Alexandria v. Alexandria Firefighters Association, 220 La. 754, 57 So.2d 673, 674 (1952). However, a literal application of this rule would have the constitution absolutely preclude the delegation of any legislative power to a non-legislative body. The courts have recognized exceptions to the nondelegation doctrine as long as the legislature establishes standards for guidance of the executive or administrative body or officer such that the body or officer is not vested with arbitrary discretion. State v. Broom, 439 So.2d 357, 361 (La.1983), on original hearing.
The power to appropriate funds to operate state government belongs exclusively to the Legislature. La. Const. art. III, § 16. The issue presented in this case is whether the Legislature may delegate any or all of its exclusive power to appropriate, and, if so, under what conditions and circumstances.
*826 The constitution contemplates and expressly provides for exceptions to the separation of powers. La. Const. art. II, § 2 provides that "[e]xcept as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others."
An exception to the Legislature's exclusive control over appropriations is expressed in La. Const. art. IV, § 5(G)(2), which provides that "[t]he governor shall veto line items or use means provided in the bill so that total appropriations for the year shall not exceed anticipated revenues for that year." Thus, the constitution permits the Legislature to delegate its appropriative authority to the governor to guarantee "that total appropriations for the year shall not exceed anticipated revenues for that year." Stated another way, the Legislature may delegate appropriative authority to the governor for the purpose of avoiding a deficit appropriation.
No restrictions, standards, or guidelines are required by this constitutional exception, other than it must be to avoid a deficit appropriation. Thus, we must conclude that the Legislature is free to delegate as little or as much authority to the governor, and under whatever conditions as prescribed by the Legislature, for the purpose of avoiding a deficit appropriation. Since this exception to the nondelegation of the Legislature's appropriative authority is found in the constitution, and except to the extent of determining whether the delegation is for the purpose of avoiding a deficit appropriation, the courts are constrained to not interfere with the delegation of this authority by the Legislature.[4]
All of Acts 10 and 38, except that part of Act 38 under Section 1 headed as Section 29, are designed to avoid a deficit, and are therefore constitutional.
Section 29 of Section 1 of Act 38 authorizes the governor "to transfer funds from one budget unit to another for any purpose necessary to keep the budget in balance or to meet emergencies; provided, however, that such transfer shall not exceed twenty-five million dollars in the aggregate and shall not increase the appropriation for budget unit beyond the amount appropriated in Act 17 of the 1986 Regular Session of the Louisiana Legislature."
We conclude based on elementary arithmetic that a deficit is avoided or the budget kept in balance by either increasing revenues, reducing appropriations, or a combination thereof. A transfer of all or part of an appropriation from one budget unit to another will not avoid a deficit or keep the budget in balance. Therefore, we must conclude that plaintiffs have made a prima facie showing that Section 29 of Section 1 of Act 38 of the First Extraordinary Session of 1986 is unconstitutional.

DECREE
Therefore, for the above and foregoing reasons, the judgment of the trial court insofar as it denied injunctive relief as to all of Acts 10 and 38, except Section 29 of Section 1 of Act 38, of the First Extraordinary Session of 1986 is affirmed. That portion of the trial court judgment maintaining the peremptory exception raising the objections of no right of action and no cause of action is reversed. The trial court is ordered to issue a preliminary injunction in accordance with the views herein expressed, and this case is remanded for further *827 proceedings. Plaintiffs-appellants are to pay all costs of this proceeding.
AFFIRMED IN PART, REVERSED IN PART, PRELIMINARY INJUNCTION ORDERED ISSUED, AND REMANDED
SHORTESS and CARTER, JJ., concur in part and dissent in part and assign written reasons.

APPENDIX

ACT NO. 10

HOUSE BILL NO. 40

AN ACT
To withhold the balance of funds appropriated to the Department of
Transportation and Development for certain capital outlay projects; to transfer those funds withheld to the state general fund; to authorize the governor to withhold appropriations for certain capital outlay projects; and to provide for related matters.
Be it enacted by the Legislature of Louisiana:
Section 1. Contrary to provisions of the law, including but not limited to the provisions of R.S. 47:727(B)(5) notwithstanding, the treasurer is hereby directed to withhold the balances of the funds, whatever their source, including state general funds, self-generated funds, or monies from the Louisiana Highway, Flood Control, and Drainage Priority Fund, appropriated in the Acts listed below in the amounts and for the prior and current years' capital outlay projects specified below. The treasurer shall transfer the total of such funds withheld in the amount of Thirty-Eight Million, Six Hundred Eighteen Thousand, Two Hundred Sixty-Three and 68/100 ($38,618,263.68) Dollars to the state general fund immediately upon the effective date of this Act in those cases where such funds are on deposit with the treasury.

 ORIGINAL APPROPRIATION AMOUNT
 Act 15 of 1974 Regular Session
Watersheds $ 22,864.82
 Act 17 of 1976 Regular Session
State General FundsPrior Year $ 3,617.00
Waterhseds $ 490.34
 Act 328 of 1977 Regular Session
State General Funds $ 15,559.02
Sanitary Facilities $ 491.81
Plant Mix $ 982.29
 Act 19 of 1978 Regular Session
Airport Striping $ 96,387.56
 Act 606 of 1978 Regular Session
State General FundsConstruction $ 24,224.31
 Act 10 of 1979 Regular Session
State General Funds $ 87.76
 Act 11 of 1980 Regular Session
Sabine River $ 5,000.00
State General Funds $ 1,695.00
Seed for Self-Generated $ 4,128.21
 Act 18 of 1980 Regular Session
State General FundsBridge Replacement $ 17,600.31
State General FundsConstruction Program $ 5,398.25
Self Generated Funds Collected $ 14,490.48
State General FundsUrban System Match $ 79,243.64

*828
 ORIGINAL APPROPRIATION AMOUNT
State General FundsBridge Replacement $ 102.00
 Act 12 of 1981 Regular Session
State General FundsWatersheds $ 4,509.79
Seed for Self-Generated Funds $ 5,144.42
 Act 864 of 1981 Regular Session
State General FundsRoad Overlay $ .07
State General FundsConstruction Program $ 98,443.01
State General FundsFederal Matching $ 2,389.97
State General FundsDeSoto Passing Lanes $ 250,000.00
State General FundsRapides Passing Lanes $ 500,000.00
State General FundsSabine Passing Lanes $ 500,000.00
State General FundsFeasibility Studies $ 13,914.64
State General FundsWeatherproofing DOTD $ 21.40
 Headquarters Building
State General FundsRehabilitation or $ 181,835.07
 Sewerage Treatment Facility
State General FundsRoof DOTD Headquarters $ 3,417.14
State General FundsChase District $ 12,648.73
State General FundsBayou Macon Weir OPW $ 215,876.63
State General FundsGrand Bayou Dam & $ 3,494.90
 Reservoir Office Public Works
 Act 13 of 1982 Regular Session
State General FundsWatersheds $ 352,019.82
State General FundsAviation Improvements $ 27,242.00
Seed for Self-Generated Funds $ 1,583.50
 Act 679 of 1982 Regular Session
State General FundsHighway Safety & Capacity $ 475,786.60
State General FundsSoil Conservation $ 15,655.97
State General FundsBridge Replacement $ 960.07
State General FundsPassing Lane Program $ 667,037.75
State General FundsLand Acquisition $ 10,000.00
 Rayville Unit
State General FundsRoof Repairs $ 575.00
State General FundsWeatherproofing Central Lab $ 17,645.00
 Act 14 of 1983 Regular Session
State General Funds $ 6,193.40
State General FundsWatersheds $ 794,575.00
 Act 629 of 1983 Regular Session
Vehicle Special Permits & Enforcement Funds $ 15,932.33
 Act 658 of 1984 Regular Session
State General FundsHighway Structural $ 183,290.32
 Repairs
State General FundsStructural Repairs & $ 761,180.23
 Paint
Seed for Self-Generated Revenues $ 97,653.27
Vehicle Special Permits & Enforcement Funds $ 53,000.00
State Gravel Road Surfacing Fund $ 1,450.00
State General FundsConstruction $ 4,502,813.54
Flood Control & Drainage Priority Funds Office of
Public Works $12,415,149.13
Flood Control & Drainage Priority Funds $ 450,447.30
 Overlays

*829
 ORIGINAL APPROPRIATION AMOUNT
Flood Control & Drainage Priority Funds $ 20,420.51
 Act 16 of 1985 Regular Session
State General FundsPublic Improvements $ 8.41
Seed for Self-Generated Funds $ 25,000.00
 Aviation Improvements
 Act 744 of 1985 Regular Session
Seed for Self-Generated Funds $ 11,685.88
Self-Generated Funds Collected $ 54,288.15
Flood Control & Drainage Priority Funds Overlays $ 80,043.27
State Gravel Road Resurfacing Fund $ 1,050.00
Flood Control & Drainage Priority Funds $15,491,518.66
 Office of Public Works

Section 2. A. Notwithstanding any provisions of law to the contrary, the governor, by Executive Order, may withhold appropriations to the Department of Transportation and Development contained in Section 1 of Act No. 1044 of the 1986 Regular Session of the Legislature, including funds dedicated for specific purposes. The total amount of appropriations withheld pursuant to this Section shall not exceed the sum of Seventy-Eight Million, Four Hundred Thousand and No/100 ($78,400,000.00) Dollars, and when considered with appropriations withheld pursuant to the provisions of House Bill 39 of the First Extraordinary Session of 1986 shall in the aggregate not exceed Two Hundred Seventy-Five Million and No/100 ($275,000,000.00) Dollars.
B. The treasurer shall withhold such funds as specified by the governor. Funds withheld shall be transferred to the state general fund for the purpose of balancing the Fiscal Year 1986-1987 budget.
C. (1) Nothing contained in this Section shall be construed as affecting any dedication to the Louisiana Highway, Flood Control, and Drainage Priority Fund under R.S. 47:727(B)(5) or any other provision of law, it being the intention of the legislature in enacting this Section only to allow the governor to transfer to the general fund monies deposited or credited to the fund by the treasurer during Fiscal Year 1986-1987 to effectuate the purposes of this Section nor shall anything contained in this Section be construed as altering or as allowing the governor to alter the funding priority for projects established by the Highway Priority Program (R.S. 48:228, et seq.) and the Statewide Flood Control Program (R.S. 38:90.1, et seq.)
(2) The provisions of this Section shall cease to be effective on June 30, 1987.
Section 3. This Act shall not be construed to affect any project contained in a settlement agreement and contract exhibits, in the cases of U.S.A. vs. Police Jury of the Parish of St. Bernard, and Lake Borgne Basin Levee District, and the State of Louisiana (81-1808 consolidated with 83-2078), and U.S.A. vs. Parish of Jefferson, West Jefferson Levee District and the State of Louisiana (81-1810 consolidated with 83-2077), on the docket of U.S. District Court for the Eastern District of Louisiana and no funds appropriated for such projects shall be withheld.
Section 4. Provided however, the provisions of this Act shall not be construed to affect any valid contract presently in force and effect.
Section 5. Notwithstanding any provision of the Statewide Flood Control Program to the contrary, any project under that program which loses its funding due to the provisions of this Act shall retain its priority ranking for funding in Fiscal Year 1987-1988 in the same order and priority as it had in Fiscal Year 1986-1987.
Section 6. In the event of any conflict between the provisions of this Act and those of any other Act adopted by the legislature at its First Extraordinary Session of 1986, regardless of which Act is adopted later or signed later by the governor, the provisions of this Act shall prevail.
*830 Section 7. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided in Article III, Section 18 of the Constitution of Louisiana.
Approved December 24, 1986.

ACT NO. 38

HOUSE BILL NO. 39

AN ACT
To amend Act No. 17 of the 1986 Regular Session of the Louisiana
Legislature by adding thereto new sections, to provide for the reduction of certain appropriations and to make additional appropriations for the ordinary expenses of state government, public charities, and pensions, to provide certain authority to the governor to withhold appropriations, to provide for certain transfers, to provide with respect to emergency rules by the Department of Health and Human Resources to implement budget reductions, and to provide for related matters.
Be it enacted by the Legislature of Louisiana:
Section 1. Sections 24 through 30 of Act No. 17 of the 1986 Regular Session of the Louisiana Legislature are hereby enacted to read as follows:
Section 24. The state treasurer shall withhold $1,700,000 of the funds appropriated to the Louisiana Small Business Development Fund out of the state general fund from the undedicated portion of 8(g) revenues.
Section 25. Payable out of the State General Fund from the undedicated portion of 8(g) revenues to the New Orleans Exhibition Hall Authority to be used solely for the operation of the New Orleans Convention Center ..... $1,700,000.
Section 26. The commissioner of administration shall withhold an amount equal to $97,159 which represents the balance of the actual state general fund costs for the governor's New Orleans' office within the executive office.

B. Payable out of the state general fund to the office of research and development in the Department of Education to be used solely to implement the mandates of the "Luke S." case ..... $1,400,000
*831 
G.(1) The state treasurer shall withhold $2,691,147 of the funds appropriated to the Louisiana Small Business Development Fund out of the state general fund from undedicated portion of 8(g) revenues.
(2) The following sums or so much thereof as may be necessary, are hereby appropriated out of the state general fund from the undedicated portion of 8(g) revenues to the vocational-technical centers:

19-9700 Region 1 Vocational-Technical Center,
 New Orleans $362,948
19-9710 Region 2 Vocational-Technical Center,
 Baton Rouge 653,878
19-9730 Region 3 Vocational-Technical Center,
 Houma 209,966
19-9740 Region 4 Vocational-Technical Center,
 Lafayette 411,966
19-9750 Region 5 Vocational-Technical Center,
 Lake Charles 242,541
19-9760 Region 6 Vocational-Technical Center,
 Alexandria 192,519
19-9770 Region 7 Vocational-Technical Center,
 Shreveport 407,934
19-9780 Region 8 Vocational-Technical Center,
 Monroe $209,991

H.(1) The state treasurer shall withhold $296,056 of the funds appropriated to the Louisiana Small Business Development Fund out of the state general fund from the undedicated portion of 8(g) revenues.
C. Payable out of the state general fund to the Department of Public Safety and Corrections to be used solely for operating expenses of the Office of Juvenile Corrections, the Division of Youth Services, and Corrections Administrative, and shall be used as a supplement to funds provided in Act No. 17 of the 1986 Regular Session of the Legislature..... $18,300,000
D. The following amounts are payable out of the funding sources specified to the following agencies within the Department *832 of Health and Human Resources:

09-8305 OFFICE OF MANAGEMENT AND FINANCE
 Payable out of the Louisiana Children's Trust Fund to implement
 the purposes and provisions of Act 481 of the 1983
 Regular Session of the Louisiana Legislature $ 110,000
09-8308 OFFICE OF HOSPITALSDIRECTOR'S OFFICE
 Payable out of the State General Fund $ 87,469
09-8322 OFFICE OF CHARITY HOSPITAL OF LOUISIANA AT NEW
 ORLEANS
 Payable out of the State General Fund $ 9,658,092
09-8326 OFFICE OF PREVENTIVE AND PUBLIC HEALTH SERVICES
 Payable out of the State General Fund to be allocated to
 Children's Hospital $ 444,583
09-8331 CENTRAL LOUISIANA STATE HOSPITAL
 Payable out of the State General Fund $ 1,787,446
09-8330 COMMUNITY MENTAL HEALTH
 Payable out of the State General Fund for the Crisis-Line
 Program $ 40,000
09-8332 EAST LOUISIANA STATE HOSPITAL
 Payable out of the State General Fund $ 1,621.915
09-8333 SOUTHEAST LOUISIANA STATE HOSPITAL
 Payable out of the State General Fund $ 1,216,268
09-8336 PUBLIC ASSISTANCE
 For:
 Medical Vendor Payments $45,570,217
 Optional State Supplementation $ 2,076,460
 AFDC $12,003,047
 Total $59,649,724
 From:
 State General Fund $21,057,171
 Federal Funds $38,592,553
 Total $59,649,724

I. Payable out of the Senior Citizens Trust Fund to the Department of Health and Human Resources for the purposes and provisions established in Act 431 of *833 the 1986 Regular Session of the Louisiana Legislature ..... $75,000
J. Payable out of the Federal Energy Settlement Fund for the purpose of providing additional funds to the departments of Natural Resources, Urban and Community Affairs and Transportation and Development ..... $16,783,134
Provided, however, that the above appropriation shall be allocated as follows:

Department of Natural Resources $133,134
Department of Urban and Community
 Affairs 150,000
Department of Transportation and
Development 16,500,000

Provided that the additional monies appropriated to the Department of Transportation and Development as provided herein shall be paid out of revenues derived or received from adjudications of the "Stripper Well" case and shall be used by the department for maintenance and repair, including overlay, of state roadways.
K. Payable out of the state general fund from self-generated funds collected in Fiscal Year 1985-1986 to the Louisiana Educational Television Authority for additional operating expenses ..... $13,928
L. Payable out of the state general fund to the Louisiana Educational Television Authority for additional operating expenses ..... $168,000
Section 28. In accordance with the provisions of Article IV, Section 5 of the Constitution of Louisiana, and in addition to the authority granted to the governor by the provisions of Section 10 of Act 17 of the 1986 Regular Session of the Louisiana Legislature and R.S. 39:55, the governor is hereby authorized to withhold appropriations from any budget unit, provided however that the appropriations withheld by the governor pursuant to this Section and pursuant to House Bill 40 of the First Extraordinary Session of 1986 shall not exceed Two Hundred Seventy-five Million and No/100 ($275,000,000.00) Dollars in the aggregate. Notwithstanding any other law to the contrary, any monies withheld pursuant to the provisions of this Section by the governor from an appropriation from a dedicated fund shall be transferred by the treasurer to the state general fund.
Section 29. Notwithstanding any provision of law to the contrary, the governor is authorized to transfer funds from one budget unit to another for any purpose necessary to keep the budget in balance or to meet emergencies; provided, however, that such transfers shall not exceed twenty-five million dollars in the aggregate and shall not increase the appropriation for budget unit beyond the amount appropriated in Act 17 of the 1986 Regular Session of the Louisiana Legislature.
Section 30. Notwithstanding any provision of law to the contrary, including any provision of the Administrative Procedure Act, the Department of Health and Human Resources may adopt emergency rules to implement budget reductions of state or federal funds, provided that the secretary of the department transmits notice of the intended action to adopt the emergency rule to each member of the House Committee on Health and Welfare, the Senate Committee on Health and Welfare, the House Committee on Appropriations, and the Senate Committee on Finance by certified mail not later than seven days prior to the adoption of such rule. In addition, prior to adoption of such emergency rule the secretary shall cause a public hearing on the proposed rule to be conducted not earlier than three days after public notice of such hearing has been given. This Section shall not apply to any fee increase.
Section 2. In the event this legislation is enacted into law, the agencies receiving appropriations herein shall submit amended budgets to the Division of Administration for approval prior to withdrawing funds from the state treasury.
Section 3. The provisions of Section 27 of this Act shall be null and of no effect on June 1, 1987.
Section 4. In the event of any conflict between the provisions of this Act and those of any other Act adopted by the legislature at its First Extraordinary Session of 1986, regardless of which Act is *834 adopted later or signed later by the governor, the provisions of this Act shall prevail.
Section 5. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as provided in Article III, Section 18 of the Constitution of Louisiana.
Approved (except as to Veto Nos. 1 through 4) December 24, 1986.
SHORTESS, Judge, concurring in part, dissenting in part.
What happened in this case is simple. The majority was blinded by the dollar tree and in the process lost sight of the forest of constitutionality.
In my opinion, Acts 10 and 38 represent an abdication by our Legislative branch of government to the Executive. Said acts violate our State Constitution's scheme of separation of powers. LSA-Const. Art. III, § 16, gives the Legislative branch exclusive control over how the branches and departments of government shall be funded by the public fisc.
I disagree with the majority's conclusion "that the Legislature is free to delegate as little or as much authority to the governor, and under whatever conditions as prescribed by the Legislature, for the purpose of avoiding a deficit appropriation."
In my opinion, LSA-Const. Art. IV, § 5(G)(2), cannot be read to give the executive unfettered discretion to completely rewrite a significant part of the appropriation plan.
I concur with the majority's treatment of the exceptions, the suspension issue, and its finding that at least part of Act 38 is unconstitutional. I would have gone further and declared both acts unconstitutional.
I respectfully concur in part and dissent in part.
CARTER, Judge, concurring in part and dissenting in part.
I agree with the majority's opinion in its treatment of all issues, except that portion of the majority's opinion which addresses the issue of suspension and the constitutionality of Act 10 § 2 and Act 38 § 28 of the acts of the First Extraordinary Session of 1986, from which I respectfully dissent.
It is my firm opinion and belief that the majority has erred in upholding legislation in which the Legislature improperly and unconstitutionally abdicated its constitutional duty and responsibility and unconstitutionally empowered the executive branch to carry out its constitutional duty.
Louisiana's Constitution, like the United States Constitution, provides for a separation of powers among the three branches of government, legislative, executive and judicial. LSA-Const. art. II, § 1; U.S. Const. arts. I, II, and III. It provides that "no one of these branches, ... shall exercise power belonging to either of the others." LSA-Const. art. II, § 2.
The separation of powers article of LSA-Const. Art. II, § 1 is violated if one branch of government or its members exercises power belonging to either of the others. LSA-Const. Art. II, § 2; State ex rel Guste v. Legislative Budget Committee, 347 So.2d 160 (La.1977). The Legislature has absolute control over finances of the state, except as limited by constitutional provisions; the Legislature decides how the branches and the department of government shall be funded from the public fisc. Segura v. Louisiana Architects Selection Board, 353 So.2d 330 (La.App. 1st Cir. 1977), remanded on other grounds, 362 So.2d 498 (La.1978).[1]
*835 In United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965); Chief Justice Warren noted that:
This "separation of powers" was obviously not instituted with the idea that it would promote governmental efficiency. It was, on the contrary, looked to as a bulwark against tyranny. For if governmental power is fractionalized, if a given policy can be implemented only by a combination of legislative enactment, judicial application, and executive implementation, no man or group of men will be able to impose its unchecked will. James Madison wrote:
"The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny."
The doctrine of separated powers is implemented by a number of constitutional provisions, some of which entrust certain jobs exclusively to certain branches, while others say that a given task is not to be performed by a given branch. (footnote omitted) [85 S.Ct. at 1712]
In Carso v. Board of Liquidation of State Debt, 205 La. 368, 17 So.2d 358 (1944), Chief Justice O'Niell wrote:
[E]mphasizing the constitutional inhibition that no person or collection of persons holding office in any one of the three departments of the government shall exercise power properly belonging to either of the other departments, we quoted [169 La. loc. cit. 1063 and 126 So. loc. cit. 554] from Washington's Farewell Address, as published in Sparks' Writings of Washington, vol. 12, pp. 382-398, thus:
"It is important, likewise, that the habit of thinking in a free country should inspire caution, in those intrusted with its administration, to confine themselves within their respective constitutional spheres, avoiding in the exercise of the powers of one department to encroach upon another. The spirit of encroachment tends to consolidate the powers of all the departments in one, and thus to create, whatever the form of government, a real despotism. A just estimate of the love of power, and proneness to abuse it, which predominates in the human heart, is sufficient to satisfy us of the truth of this position. The necessity of reciprocal checks in the exercise of political power, by dividing and distributing it into different depositories, and constituting each the Guardian of the Public Weal against invasions by the others, has been evinced by experiments, ancient and modern; some of them in our country and under our own eyes. To preserve them must be as necessary as to institute them. If, in the opinion of the people, the distribution or modification of the constitutional powers be in any particular wrong, let it be corrected by an amendment in the way which the constitution designates. But let there be no change by usurpation; for, though this, in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed. The precedent must always greatly overbalance in permanent evil any partial or transient benefit which the use may at any time yield." [17 So.2d at 363-364]
The legislative power of the state is vested in a Legislature, consisting of a Senate and a House of Representatives. LSA-Const. art. III, § 1. It is from these provisions that we derive the general principle "that legislative power, conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or to any other body or authority." State v. Broom, 439 So.2d 357 (La.1983); City of Alexandria v. Alexandria Firefighters Association, 220 La. 754, 57 So.2d 673 (1952). Among the legislative powers conferred upon the Legislature by the constitution is absolute control over appropriations. "It is the Legislature that decides how the branches and departments of government shall be funded from the public fisc. LSA-Const. Art. 3, § 16." Segura v. Louisiana Architects Selection Board, supra at 332. Inherent in the power *836 of appropriation is the power to specify how the money shall be spent. Henry v. Edwards, 346 So.2d 153 (La.1977). Thus, it is the Legislature's duty to shape state government through the appropriations process.
If applied literally, the Constitution would absolutely preclude any delegation of legislative power to a non-legislative body. Because such literal application of the non-delegation principles may unduly hamper the Legislature in the exercise of its constitutionally vested powers, the courts have repeatedly recognized that there are exceptions to the non-delegation doctrine. United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175 (1932); United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911); State v. Rodriguez, 379 So.2d 1084 (La.1980); Schwegmann Brothers Giant Super Markets v. McCrory, Commissioner of Agriculture, 237 La. 768, 112 So.2d 606 (1959); State v. Guidry, 142 La. 422, 76 So. 843 (1917); State v. Syas, 136 La. 628, 67 So. 522 (1915).
While the Legislature may delegate certain powers to other branches or bodies, the Legislature cannot lodge "unfettered discretion" with an administrative officer. Schwegmann Brothers Giant Super Markets v. McCrory, supra. In doing so, the Legislature unconstitutionally abdicates its legislative power. Where one branch abdicates its constitutional responsibility, as opposed to having its responsibility usurped by another branch, the danger to free government is just as imminent and the danger as great as was recognized by President Washington in his farewell address. Where the Legislature enacts a statute vesting arbitrary discretion in another branch of government without prescribing standards of guidance, there is an unconstitutional delegation of legislative authority to the executive branch of the government. State v. Rodriguez, supra.
Thus, if the Legislature establishes by statute standards for the guidance of the executive or administrative body or officer, such that the body or officer is not vested with arbitrary discretion, there is no unconstitutional delegation of legislative authority to the executive branch of the government. State v. Rodriguez, supra.
The task of determining whether a particular delegation is accompanied by sufficient "guiding standards" is not a simple one. This was recognized by United State Chief Justice John Marshall in 1825:
The line has not been exactly drawn which separates those important subjects, which must be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provision, to fill up the details. Wayman v. Southard, 23 U.S. (10 Wheat) 1, 43, 6 L.Ed. 253.
Thus, the task becomes a balancing of the legislative need to delegate authority against the constitutional mandate that the Legislature retain in its own hands the supreme legislative power. It has been noted that:
The key to an intelligent application of this [balancing] is an understanding that, while delegations of power to administrative agencies are necessary, such transfers of power should be closely monitored to insure that the decision-making by the agency is not arbitrary and unreasoned. Glenn, the Coastal Management Act in the Courts: A Preliminary Analysis, 53 N.C.L.Rev. 303, 315 (1974).
The "guiding standards" test has been used as a means of determining where the line of legislative delegation should be drawn. In determining whether a certain delegation of legislative authority vests arbitrary discretion in another branch of government, an examination of the declarations in the delegating statutes of the goals, policies and standards which a given agency is to apply in the exercise of the delegated powers is necessary.
In the instant case, in the 1986 Extraordinary Session, the Legislature enacted Act 10 which provides in pertinent part:
Section 2. A. Notwithstanding any provisions of law to the contrary, the governor, by Executive Order, may withhold *837 appropriations to the Department of Transportation and Development contained in Section 1 of Act No. 1044 of the 1986 Regular Session of the Legislature, including funds dedicated for specific purposes. The total amount of appropriations withheld pursuant to this Section shall not exceed the sum of Seventy-Eight Million, Four Hundred Thousand and No/100 ($78,400,000.00) Dollars, and when considered with appropriations withheld pursuant to the provisions of House Bill 39 of the First Extraordinary Session of 1986 shall in the aggregate not exceed Two Hundred Seventy-Five Million and No/100 ($275,000,000.00) Dollars.
B. The treasurer shall withhold such funds as specified by the governor. Funds withheld shall be transferred to the state general fund for the purpose of balancing the Fiscal Year 1986-1987 budget.
This Act allows the governor to withhold appropriations to the Department of Transportation and Development in any amount not to exceed $78,400,000.00. Should the governor choose to withhold the entire $78,400,000.00, that amount would be placed in the general fund to be used to balance the budget. Such power would permit the governor to redistribute the $78,400,000.00 as he wished, funding some preferred budget units while ignoring others. The act provides no guidance as to which budget unit is to be favored with such redistributed appropriations and which is to be slighted by failing to redistribute appropriations.
Act 38 of the 1986 Extraordinary Session provides in pertinent part as follows:
Section 28. In accordance with the provisions of Article IV, Section 5 of the Constitution of Louisiana, and in addition to the authority granted to the governor by the provisions of Section 10 of Act 17 of the 1986 Regular Session of the Louisiana Legislature and R.S. 39:55, the governor is hereby authorized to withhold appropriations from any budget unit, provided however that the appropriations withheld by the governor pursuant to this Section and pursuant to House Bill 40 of the First Extraordinary Session of 1986 shall not exceed Two Hundred Seventy-five Million and No/100 ($275,000,000.00) Dollars in the aggregate. Notwithstanding any other law to the contrary, any monies withheld pursuant to the provisions of this Section by the governor from an appropriation from a dedicated fund shall be transferred by the treasurer to the state general fund.
Section 29. Notwithstanding any provision of law to the contrary, the governor is authorized to transfer funds from one budget unit to another for any purpose necessary to keep the budget in balance to meet emergencies; provided, however, that such transfers shall not exceed twenty-five million dollars in the aggregate and shall not increase the appropriation for budget unit beyond the amount appropriated in Act 17 of the 1986 Regular Session of the Louisiana Legislature.
By giving to the governor the power to withhold appropriations from any budget unit, this act empowers the governor to reduce by 100% the allocation to a budget unit whose appropriation was less than $197,600,000.00. Any number of budget units with relatively small appropriations could be effectively eliminated for the fiscal year by reducing the appropriation to that unit to zero. The governor could achieve the same result under Section 29 with a budget unit whose appropriation was $25,000,000.00 or less. Further, Section 29 gives the governor the power to redistribute funding, namely, to "transfer" an amount appropriated to one budget unit to another budget unit. Within the overall ceiling, Act 38 places no limitations on the amounts or percentages that may be withheld. Under this provision, the governor is authorized to determine which budget unit will be denied their legislatively appropriated budget, the amount (conceivably 100%) of the appropriations denied and the agencies to whom funds will be transferred.[2]
*838 Taken together, these acts bestow upon the governor the power both to give and to take; this is the essence of the legislative appropriation process in a government with finite funds. "Appropriation" means an authorization by the legislature to a budget unit to expend from public funds a sum of money, for purposes designated, under the procedure prescribed in this Chapter. LSA-R.S. 39:2(2). Under Act 38, the governor can withhold (to the point of elimination in some cases) the funding of an agency. This power to revoke an appropriation, unfettered by any limitation as to the percentage by which any budget unit can be cut, puts the governor in the place of the Legislature at the heart of the appropriation process. Under Act 38 and Act 10 he can redirect funds withheld to other budget units.[3] In short, these acts give to the governor extensive control of the appropriation process within the gross amount limitations. The majority holds that this is a constitutional delegation because it is consistent with the governor's power to "use means provided in the bill so that total appropriations for the year shall not exceed anticipated revenues for that year." LSA-Const. art. IV, § 5(G)(2).
The majority's erroneous interpretation of LSA-Const. art. IV, § 5(G)(2) empowers the governor to radically repaint the picture of governmental funding established by the Legislature. The extensive power which the majority determined was granted to the governor by Acts 10 and 38 transcends that granted by such provisions as LSA-R.S. 39:55. By withholding the entirety of an appropriation, by taking from one agency and giving to another, and by restructuring how $74,500,000.00 (or arguably, $275,000,000.00) is to be distributed among budget units, the governor can significantly alter the appropriation scheme that, under our Constitution, is the primary duty and responsibility of the Legislature. This grant of power radically alters the scheme of government based on separation of powers and allows the executive branch to become dominant over the other branches of government. Any potential or transient benefit and need of expediency are greatly overbalanced by the potential for present and future abuse.
Previously, when examining LSA-R.S. 39:55, the following observation was made:
[T]he ten percent limitation provision was intended to insure that each budgetary unit is assured of receiving ninety percent of its appropriated funding unless the members of the legislature deem otherwise. Thus, the statute guarantees that the governor will spread any needed budget reduction out over a number of units.
Louisiana Association of Planning and Development Districts v. Treen, 435 So.2d 1003, 1007 (La.App. 1st Cir.1983). We thus recognized both the delegation of power to reduce appropriations when revenues are low and the limitations to that delegation which maintain the Louisiana Legislature's overall vision of where the state's money should be spent. Under the authority of Acts 10 and 38, the governor need not "spread any needed budget reductions out over a number of units"; instead, he may make a few agencies bear the entire weight of the required reduction, thus destroying the Legislature's scheme of appropriations.
I recognize that LSA-Const. art. IV, § 5(G)(2) permits the Legislature to give the governor some authority to balance the budget. However, I reject the assertion that, under the auspices of art. IV, § 5(G)(2), the Legislature may abdicate to the executive the legislative appropriation process to the extent authorized by Acts 10 and 38. The Legislature may not transfer to the governor the power to completely rewrite a significant part of the appropriation plan. Act 10 does this by allowing him to "deappropriate" entire budget units up to the $197,600,000.00 ceiling. Act 38, § 28 accomplishes this by allowing him to "deappropriate" *839 and then "reappropriate." LSA-R.S. 39:55 gives the governor what amounts to sand paper to refine the plan of appropriations; by Acts 10 and 38, he is given an ax to reshape it. This latter goes too far and permits an unconstitutional delegation to the executive of legislative power to shape state government through the appropriation process. The majority's opinion establishes a dangerous precedent. I believe that the plaintiffs have made a prima facie showing that they are entitled to an injunction as prayed for. Therefore, I respectfully dissent from the majority's opinion to the contrary.
NOTES
[1] The senators and representatives included in this group are: Representative Charles Emile Bruneau, Jr., Representative Carl N. Crane, Representative John J. Hainkel, Jr., Representative Charles D. Lancaster, Jr., Representative Edward C. Scogin, Representative Quentin D. Dastuque, Representative Jimmy N. Dimos, Representative Terry W. Gee, Senator Ron Landry and Senator Kenneth E. Osterberger.
[2] The following associations are included in this second group of plaintiffs:

Louisiana Association of General Contractors, Highway Heavy Municipal-Utilities Chapter, Inc.; The Louisiana Asphalt Pavement Association, Inc.; The Association of General Contractors of Louisiana, Inc.; The Louisiana Motor Transport Association, Inc., Louisiana Highway Users Federation, Inc. and Louisiana Good Roads and Transportation Association, Inc.
[3] The issue of the relationship of the judicial and legislative branches of state government vis-a-vis the appropriation process has never been decided. However, it has been held that the courts have the inherent authority to compel the legislative branch of government to appropriate the reasonably necessary expenses of the courts, and that mandamus is a proper procedural device. City Court of Breaux Bridge v. Town of Breaux Bridge, 440 So.2d 1374 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 1219 (La. 1984); McCain v. Grant Parish Police Jury, 440 So.2d 1369 (La.App. 3rd Cir.1983).
[4] We specifically note that in this case we are applying the constitutional mandate to avoid a deficit appropriation as an exception to the exclusive authority of the Legislature to appropriate. The Legislature, as a separate branch of government, has its own appropriation bill. Although the judicial branch has traditionally been included in the General Appropriations Bill, there appears to be no question that the constitutionally correct procedure would also require a separate appropriation bill for the judicial branch. All constitutional provisions must be read to give effect to each. The question is not presented here, and we do not decide whether the Legislature may delegate authority to the governor to exercise appropriative authority over the budgets of the other branches of government, even under the constitutional auspices of avoiding a deficit. Suffice to note that we would consider such a delegation of legislative authority as presenting serious constitutional questions which are not presented in this case.
[1] The Sections here reproduced are part of Section 1 of Act 38, the opening portion of which reads:

"Section 1. Sections 24 through 30 of Act no. 17 of the 1986 Regular Session of the Louisiana Legislature are hereby enacted to read as follows."
Thus, the numbers 28 and 29 refer to sections of the general appropriations bill passed in the regular session. For convenience, we will refer to them as sections 28 & 29 of Act 38.
[2] In the transfer process, the governor cannot exceed the appropriation for any agency granted in the general appropriation bill.
[3] Arguably, the governor can use the entire $275,000,000.00 withheld to balance the budget as he chooses; Act 10 mentions the $275,000,000.00 aggregate figure immediately before declaring that funds withheld are to be placed in the general fund for the purpose of budget balancing. Act 38 provides for the transfer to the general fund of all dedicated funds withheld.