Dear Ms. Butler:
You requested the opinion of this office concerning R.S. 27:392 which governs the collection and disposition of fees and taxes imposed or assessed on certain gaming operations. As you advised, all monies collected under said statute are forwarded to the state treasurer for deposit into the state treasury and are first credited to the Bond Security and Redemption Fund in accordance with Article VII, Section 9(B) of the Constitution of Louisiana. After complying with the constitutional mandate, the state treasurer credits the remaining monies to a special fund in the state treasury called the "Pari-mutuel Live Racing Facility Gaming Control Fund" (the "Gaming Control Fund" or the "Fund").
R.S. 27:392(B) (2) (b) mandates that the monies in the Gaming Control Fund are to first be used for the expenses of the Gaming Control Board (the "Board"), the Department of Justice, and the State Police's gaming control division (the "Division") and then states that "[a]ny monies in the Gaming Control Fund remaining after appropriation for expenses of the board, the Department of Justice, and the division shall be credited as provided in Paragraph (4) of this Subsection." Paragraph (4) directs the Treasurer to transfer $12,000,000 to the Louisiana Agricultural Finance Authority ("LAFA"). Subparagraph (2) (b) does not address paragraphs (3), (5), or (6). Paragraph (3) dictates the transfer of monies (5%) to parish "Excellence Funds", paragraph (5) requires the Treasurer to transfer $1,000,000 to the Blind and Visually Impaired Rehabilitation Fund, and paragraph (6) directs the Treasurer to transfer any remaining monies to the State general fund. Paragraphs (3), (4), and (5) all begin with the same language, namely, "After complying with the provisions of Paragraphs (1) and (2) of this Subsection, the state treasurer shall [credit money to this particular fund]".
The opinion of this office is requested on how the Treasury should allot the monies from the Fund that remain after appropriations for expenses of the board, the Department of Justice, and the division have been credited.
You further advised that the Treasury was particularly concerned with how to interpret this statute because the Treasury estimates that the Fund will not contain more than $12,450,000 at the close of the fiscal year, yet there will be three appropriations from the Fund for fiscal year 2001 2002:
 1) $450,000 to the division (through a BA-7 from the division);
 2) $6,848,758 ($7,209, 344 (from Act 12 of the 2001 Regular Session) less $360,586 (to come from the State General Fund under HB 243 of the 2002 Regular Session)) to LAFA; and
3) $376,022 to the Calcasieu Parish Excellence Fund.
If the Treasurer is required to transfer $12,000,000 to LAFA under paragraph (4), before complying with paragraph (3), there will be no money remaining to transfer to the Calcasieu Parish Excellence Fund.
The legislature has absolute control over the finances of the state, except as limited by constitutional provisions. Woodard v. Reily,244 La. 337, 152 So.2d 41 (La. 1963). It is the legislature that decides how the branches and departments of government shall be funded from the public fisc. Segura v. Louisiana Architects Selection Board, et al.,353 So.2d 330 (La.App. 1st Cir. 1977); Louisiana Public FacilitiesAuthority v. Foster, 2001-0009 (La. 9/18/01), 795 So.2d 288; Quarles v.Jackson Parish Police Jury, 482 So.2d 833 (La.App. 2 cir. 1986), citingState ex rel. Assistant Dist. Attys. Ass'n v. Theriot. 242 So.2d 49
(La.App. 1 Cir. 1970). The power to appropriate funds to operate state government belongs exclusively to the legislature. La. Const. Art. III, Sec. 16; Bruneau v. Edwards, 517 So.2d 818 (La.App. 1st Cir. 1987). An appropriation is a legislative act of authorization for the withdrawal of public funds by warrant from the state treasury by designated officers or institutions for expenditure for certain public purposes specified by the legislature. La. Const. Art. III, Sec. 16; Op.Atty.Gen. 91-174.
In Bruneau, the First Circuit held that because the legislature exercised plenary power rather than delegated power, it might exercise its appropriation power in any way not inconsistent with the Constitution. Furthermore, the First Circuit specifically stated that "we know of no constitutional provision, nor has any been cited, which would preclude the legislature, by majority vote, from appropriating dedicated funds to purposes other than that specified in the act of dedication.
Accordingly, it is the opinion of this office that the legislature has the plenary power to decide how to appropriate monies and the Treasury is mandated to follow those appropriations, even if the appropriation is for a purpose other than that specified in the act of dedication.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
RELEASED: June 27, 2002