652 So.2d 693 (1995)
The NEIGHBORHOOD ACTION COMMITTEE and Kevin Smith
v.
STATE of Louisiana and The City of Kenner.
No. 94 CA 0807.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
*694 Timothy W. Cerniglia, New Orleans, for plaintiffs-appellants The Neighborhood Action Committee and Kevin Smith.
Robert H. Carpenter, Jr., Baton Rouge, for defendant-appellee State.
Michael J. Power, Kenner, for defendantappellee City of Kenner.
Before FOIL, WHIPPLE and KUHN, JJ.
KUHN, Judge.
This appeal is taken from the trial court's action in sustaining peremptory exceptions of no cause of action and no right of action which dismissed the petition seeking specific performance of a state lease and related injunctive relief. We affirm.

FACTS
Defendants-appellees, the State of Louisiana ("State") and the City of Kenner ("City"), entered into State Lease Number 1298 ("Lease 1298") for a term of twenty-five years in 1981. Lease 1298 obligated the City to develop a public recreational facility on a plot of state-owned waterbottoms at the foot of Williams Boulevard on Lake Ponchartrain.
In 1993, the Kenner City Council approved a lease agreement between the City and Treasure Chest Casino, L.L.C. ("Treasure Chest"), which permitted the operation of a riverboat at a Mississippi River site in Kenner. The lease allows Treasure Chest to *695 relocate its vessel to property owned by or in the control of the City. After the Mississippi River site was declared unsafe for riverboat gaming operations by the United States Coast Guard and the Army Corps of Engineers, the premises of Lease 1298 were proposed as an alternative site. The Kenner City Council approved a resolution authorizing an amendment to Lease 1298 to facilitate the relocation of the riverboat gaming operation to the leased premises on Lake Ponchartrain at the Williams Boulevard site.
In response, the petitioners-appellants, the Neighborhood Action Committee ("NAC"), a Jefferson Parish non-profit corporation consisting of residents of the City, and Kevin Smith, a domiciliary of the City, filed a petition which seeks the specific performance of Lease 1298. Additionally, the petition requests injunctions prohibiting the defendants from amending Lease 1298 to allow for the establishment of riverboat gaming on any portion of the leased premises, and from using any portion within or near the leased premises for a riverboat gaming operation.[1]
The defendants filed peremptory exceptions of no right of action and no cause of action which the trial court sustained. A judgment dismissing appellants' lawsuit was rendered on December 28, 1993. From this judgment, NAC appeals.

ANALYSIS
The sole issue for consideration is whether the appellants have the right to demand specific performance of Lease 1298 or to enjoin the State and the City from amending Lease 1298. The appellants assert the existence of such a right under several theories.
The first contention the appellants raise is a claim of the status of third party beneficiaries to Lease 1298. La.Civ.Code art. 1978 provides:
A contracting party may stipulate a benefit for a third person called a third party beneficiary.
Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.
The stipulation, known as a stipulation pour autrui, "gives the third party beneficiary the right to demand performance from the promisor[,]" under La.Civ.Code art. 1981. Appellants contend that Lease 1298 evidences an intent by the State and the City to confer third party beneficiary status on each member of NAC individually in the following provisions:
This lease is made for and in consideration of the benefits, uses and advantages that the citizens in the State of Louisiana will gain by the development of this public recreational area.
The property herein leased shall be used as a public recreation area and all of its facilities shall be accessible to the publicat-large.
Relying on Allen & Currey Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 So. 980 (1905), the trial court found that the City, in becoming a party to Lease 1298, intended to do no more than to discharge its governmental function of providing adequate recreational lands/facilities to its inhabitants and concluded that no true stipulation pour autrui existed in favor of the petitioners.
In Allen the court considered whether a contract to keep fire hydrants in good working order between Shreveport Waterworks and the City of Shreveport conferred a stipulation pour autrui in favor of the plaintiff whose plant had been destroyed by fire. The Allen court stated,
[t]he contracts of [a] city ... are entered into for the public benefit ... but these contracts are not stipulations pour autrui in favor of the inhabitants individually ... [A] municipal corporation is nothing more than a fictitious being created for the purpose of administering the affairs of the public, and necessarily all its contracts are for `the public benefit'; but it does not *696 follow that they are all stipulations pour autrui in favor of the inhabitants individually, and that the latter may bring suit thereon.
Allen v. Currey Mfg. Co., 37 So. at 986. In dismissing the plaintiff's lawsuit, the Louisiana Supreme Court concluded that no cause of action in contract had been alleged and that the contract between the City of Shreveport and the defendant did not contain a stipulation pour autrui.
The reasoning in Allen applies with equal force to the instant case. Although by the terms of the agreement, the State and the City agreed that the leased property "shall be used as a public recreation area and all of its facilities shall be accessible to the public at large," the duty to carry out the contract did not extend to anyone other than the parties to the contract. Any benefit appellants expected to, or did, receive from Lease 1298 was merely an incident of the agreement between the State and the City. See Burdis v. Lafourche Parish Police Jury, 542 So.2d 117 (La.App. 1st Cir.1989). To hold otherwise would stop governmental action and bring municipal governance to a standstill. No theory of law or republican government supports the approach taken by the appellants. Accordingly, we find that the appellants are not third party beneficiaries to Lease 1298.
Appellants' next argument in support of their contention that they have the requisite "standing" to demand specific performance of Lease 1298 relies on La.Civ.Code art. 458, which states, in pertinent part:
Works built without lawful permit on public things, including the sea, the seashore, and the bottom of natural navigable waters, or on the banks of navigable rivers, that obstruct the public use may be removed at the expense of the persons who built or own them at the instance of the public authorities, or of any person residing in the state.
Essentially, the appellants assert that the language of La.Civ.Code art. 458 codifies the principle that each citizen possesses an individual right and special interest in stateowned lands which evidences their right to challenge Lease 1298.
Appellants argue that because the proposed amendment permitting the relocation of Treasure Chest to a portion of the premises subject to Lease 1298 violates Article 9, Section 3 of the Louisiana Constitution, it would necessarily be "without lawful permit" as required under La.Civ.Code art. 458. Article 9, Section 3 of the Louisiana Constitution, provides:
The legislature shall neither alienate nor authorize the alienation of the bed of a navigable water body, except for purposes of reclamation by the riparian owner to recover land lost through erosion. This Section shall not prevent the leasing of state lands or water bottoms for mineral or other purposes. Except as provided in this Section, the bed of a navigable water body may be reclaimed only for public use.
The trial court found that other than the failure to obtain petitioners' consent to the proposed lease amendment, there was no showing that the execution of the lease to Treasure Chest would be "without lawful permit."
Appellants concede in their brief that they do not seek to remove an existing structure which inhibits the public's use of state-owned land. It is unnecessary to address the merits of the appellants' constitutional argument. Not only have no works been built on the property in question, but no contract has actually been executed altering the terms of Lease 1298. Because appellants have neither alleged nor offered evidence to show any "works without lawful permit," we find La. Civ.Code art. 458 does not afford appellants a right of action to seek specific performance of Lease 1298. Therefore, we find no error in the trial court's conclusion.
The last argument that appellants have made is that the Public Trust Doctrine[2] confers upon them an individual right in the use and management of public lands. Based on this right, they claim to have "standing" to challenge the proposed amendment to Lease 1298. Appellants contend that the use *697 of the words "public trust" in the heading of La.R.S. 41:1701,[3] implies that land leased in accordance with this provision is leased in furtherance of the "public trust." We disagree.
The appellants incorrectly cite La.R.S. 41:1701 as the enabling statute for Lease 1298. Lease 1298 was enacted pursuant to the grant of authority provided in La.R.S. 41:1501.[4] A plain language reading of both La.R.S. 41:1701 and R.S. 41:1501 lends no support to appellants' theory. Other than the use of the words "public trust" in the heading to La.R.S. 41:1701, nothing in either statute describes or implements the public trust doctrine. La.R.S. 1:13 provides, "[h]eadings to sections, source notes and cross references are given for the purpose of convenient reference and do not constitute part of the law." We find that the appellants' reliance on the Public Trust Doctrine to claim a right of action to demand specific performance of Lease 1298 is without merit.
La.Code of Civ.Proc. art. 681 states in pertinent part, "... [a]n action can be brought only by a person having a real and actual interest which he asserts." In order to have standing, a plaintiff must show an interest in the litigation peculiar to him personally and separate and distinct from that of the general public. Schaefer v. Treen, 444 So.2d 188 (La.App. 1st Cir.1983), writ denied, 446 So.2d 315 (La.1984). We find that appellants have failed to establish a "special interest" sufficient to state a right of action to demand the specific performance of or to enjoin the proposed amendment to Lease *698 1298. See, League of Women Voters v. City of New Orleans, 381 So.2d 441 (La.1980).

CONCLUSION
Based on the foregoing reasons, the judgment dismissing the appellants' petition for specific performance and injunctive relief is affirmed. The costs of this appeal are assessed against the appellants.
AFFIRMED.
FOIL, J., dissents and assigns reasons.
FOIL, Judge, dissenting.
I respectfully dissent.
I feel that the trial judge should not have sustained the state and the City of Kenner's exception of no right and no cause of action. These are citizens of the state and city who are contesting the right of the state and city to amend a property lease. I feel that citizens of the city of Kenner have the right to contest the actions of their governmental officials in a case such as this. I express no opinion as to whether they should ultimately prevail. However, I do believe that they should at least have the right to bring the matter to trial.
For the above reasons, I would reverse the trial judge's sustaining the exception of no right or cause of action, and permit the matter to go to trial.
NOTES
[1] In a related case, State ex rel. Neighborhood Action Committee and Kevin Smith v. Edwin Edwards, Governor, et al., 94-CA-0630, 652 So.2d 698, rendered on this date by this court, NAC and Kevin Smith filed a petition for a writ of mandamus naming various State of Louisiana and City of Kenner officials as defendants.
[2] LSA Const. art. 9, sec. 1
[3] La.R.S. 41:1701 provides:

The beds and bottoms of all navigable waters and the banks or shores of bays, arms of the sea, the Gulf of Mexico, and navigable lakes, belong to the state of Louisiana and the policy of this state is hereby declared to be that these lands and waterbottoms, hereinafter referred to as `public lands', shall be protected, administered and conserved to best insure full public navigation, fishery, recreation, and other interests. Unregulated encroachments upon these properties may result in injury and interference with the public use and enjoyment and may create hazards to the health, safety, and welfare of the citizens of this state. To provide for the orderly protection and management of these stateowned properties and serve the best interests of all citizens, the lands and waterbottoms, except those excluded and exempted herein below, or as otherwise provided by law shall be under the management of the Department of Natural Resources, hereinafter referred to as `the department' which shall be responsible for the control, permitting, and leasing of encroachments upon public lands, in accordance with this Chapter and the laws of Louisiana and the United States.
[4] La.R.S. 41:1501 provides:

The register of the State Land Office, with the concurrence and approval of the governor, is hereby authorized and empowered to lease on behalf of the state any portion or part of any meandered state-owned lake, bay, cove or the bed and bottom thereof or state-owned lands reclaimed therefrom to any governing authority of a parish or municipality or any combination thereof, the Louisiana Wild Life and Fisheries Commission, the State Parks and Recreation Commission, and the Louisiana State Department of Highways for use primarily for public recreational purposes; provided, however, that said leases may only be entered into with the aforementioned municipal and parish governing authorities or any combination thereof, when the geographical territory encompassed by said governing authorities is directly adjacent to the lake, bay, cove or any part thereof or the bed and bottom thereof or lands reclaimed therefrom. In the case of leases to the State Parks and Recreation Commission, the State Wild Life and Fisheries Commission, and/or the State Department of Highways, said leases may be granted on a statewide basis subject to all conditions and requirements as provided for under the provisions of this Chapter. Subject to the approval of the register of the State Land Office, and with the concurrence of the attorney general, the political body who has been granted a lease under the provisions of this Chapter may place improvements in and on the leased property, and after obtaining the approval of the register may assign or sublease such lease; provided, however, that any political body subleasing or assigning its lease as herein authorized shall supervise its sublessee or assign to insure that the terms and conditions of the original lease are observed, and provided, further, such assignment or sublease shall be only to the highest responsible bidder after advertisement in accordance with R.S. 41:1213-41:1215.1.
Any lease made by the register of the State Land Office pursuant to the provisions of this chapter shall be on behalf of the state of Louisiana except that, as to any lake, bay, cove and the bed and bottom thereof and land reclaimed therefrom, or part thereof, not under the jurisdiction and control of the state of Louisiana, the lease shall be made on behalf of the political body or entity having such jurisdiction and control and only at its request.