889 So.2d 282 (2004)
Senator Joe MCPHERSON
v.
Murphy J. "Mike" FOSTER, Governor of the State of Louisiana, Mark Drennan, Commissioner of Administration, BP American Production Company and White Lake Preservation, Inc.
No. 2003 CA 2696.
Court of Appeal of Louisiana, First Circuit.
October 29, 2004.
Rehearing Denied December 10, 2004.
*284 Stephen M. Irving, Baton Rouge, Counsel for Plaintiff/1st Appellant, Senator Joe McPherson.
L. Brent Barry, Joseph J. McKernan, Baton Rouge, Counsel for Intervenor/2nd Appellant. Louisiana Wildlife Federation, Inc.
William F. Grace, Jr., New Orleans, Counsel for Defendants/Appellees, Governor Murphy J. Foster and Mark Drennan, Commissioner of Administration.
John F. Olinde, Robert S. Rooth, New Orleans, Counsel for Defendant/Appellee, White Lake Preservation, Inc.
G. William Jarman, Baton Rouge, Counsel for Defendant/Appellee, BP American Production Company.
Before: WHIPPLE, FITZSIMMONS and DOWNING, JJ.
WHIPPLE, J.
In this appeal, plaintiff and intervenor challenge the trial court's judgment, maintaining defendants' exceptions of no right *285 of action and dismissing their claims for declaratory judgment with prejudice. For the following reasons, we affirm in part, reverse in part and remand. Additionally, we deny the motion to dismiss for lack of subject matter jurisdiction filed in this court.

FACTS AND PROCEDURAL HISTORY
On September 5, 2002, plaintiff, Senator Joe McPherson, filed a petition for declaratory judgment against: Murphy J. Foster, the governor of the state of Louisiana at that time; Mark Drennan, the Commissioner of Administration for the state of Louisiana; BP America Production Company ("BP"); and White Lake Preservation, Inc. The petition alleged that BP and the State, through Drennan as Commissioner of Administration, had entered into certain agreements through which BP agreed to donate real property known as "White Lake Property" located in Vermilion Parish; that the agreements were entered into without legislative approval, rendering them unconstitutional; and that certain terms and conditions placed upon the donated property violated various provisions of the Louisiana Constitution.
Specifically, McPherson alleged in his petition that BP had entered into various agreements through which it donated the White Lake Property to the State, conditioned upon the creation of a cooperative endeavor agreement, and donated moveable property connected to and involved with the White Lake Property to White Lake Preservation, Inc., a newly created, nonprofit corporation charged with the management of the property. According to McPherson, the effect of these agreements was as follows: (1) BP donated to the State, without warranty of title, a hunting and fishing resort development that BP alleged it owned or on which BP had asserted a claim, subject to a reservation of mineral rights in favor of BP; (2) White Lake Preservation, Inc. was delegated the task of "land and water management" of the property including preservation of the wildlife and aquatic life thereon for the State; (3) Governor Foster and the original board members would control White Lake Preservation, Inc. in perpetuity and were the sole appointing authority for subsequent members of the board of directors of the corporation; (4) moveable property associated with the property was donated to White Lake Preservation, Inc.; and (5) BP was to provide temporary funding for White Lake Preservation, Inc.
With regard to the provision of the donation agreement whereby BP donated the White Lake Property subject to a reservation of mineral rights, the petition alleged that the donation agreement improperly reserved to BP the right to all subsurface, oil, gas and other minerals. Thus, McPherson contended that the language of the reservation of mineral rights could be read as granting BP mineral rights on state-owned land and water bottoms within the White Lake Property and on any land subsequently acquired by the State as part of the White Lake Property. Accordingly, to the extent the donation agreement granted BP mineral rights on state-owned land and water bottoms, McPherson contended that the reservation was unconstitutional in that it violated: La. Const. art. VII, § 14, as a donation of public property to BP; La. Const. art. IX, § 4, as a grant of mineral rights by a procedure other than that established by law; and La. Const. art. IX, § 5, as a grant of mineral rights on state-owned land without public bid.
McPherson further contended that the cooperative endeavor agreement entered into by the parties, through which White Lake Preservation, Inc. was charged with *286 management of the property, violated La. Const. art. IX, § 1, because it had not been approved by the legislature and was inconsistent with legislative policy concerning management of state natural resources.[1] He further contended that the cooperative endeavor agreement violated the organization of state government established by La. Const. art. IV, § 1 and usurped the power and authority of the Wildlife and Fisheries Commission established by the Louisiana Constitution.[2]
Accordingly, McPherson, as a Louisiana resident and member of the Louisiana legislature, sought: a declaration that the cooperative endeavor agreement is subject to legislative approval and is otherwise unconstitutional; a declaration that the Louisiana Wildlife and Fisheries Commission has sole jurisdiction over all wildlife, aquatic life and the beds and bottoms of rivers, streams, bayous, lagoons, lakes and bays within the White Lake Property; and a declaration that the reservation of mineral rights in the White Lake Property does not and cannot grant or reserve to BP any mineral rights on state-owned land or water bottoms without compensation to the State through the public bid process.
In response to McPherson's petition, BP filed an exception of no right of action, contending that McPherson did not have a legally protected and tangible interest in the transactions at issue. Following a hearing on the exception, the trial court maintained BP's exception, finding that McPherson's petition was actually seeking to compel action, that is, compliance with certain constitutional provisions, and that without a showing of a special interest in the litigation peculiar to him and separate and distinct from the general public, McPherson would not be permitted to proceed. Thus, judgment was rendered maintaining BP's exception of no right of action and ordering McPherson to amend his petition within fifteen days. The judgment further provided that if McPherson failed to do so, his action would be dismissed with prejudice.
Thereafter, McPherson amended his petition to provide that he sought declaratory judgment with regard to the transactions at issue as a Louisiana resident, taxpayer, voter, member of the Louisiana legislature, long-time member of the Louisiana Wildlife Federation ("LWF"), and long-time member of the board of directors of the LWF. In addition to the challenges to the agreements set forth in his original petition, McPherson alleged that as a Louisiana senator, he would have had the opportunity to participate in hearings and vote on any legislation seeking to authorize or implement the White Lake agreements, as well as to advocate proposed changes in the legislation. Thus, he contended that the agreements usurped his authority as a legislator.
*287 McPherson further averred in his amended petition that the act of donation provided that "the terms and conditions including the Conservation Restrictions shall immediately attach to, and affect any land or property that is entirely contained within the White Lake Property, and is now owned or claimed by Louisiana or later acquired, owned or claimed by Louisiana." He contended that this clause and the reservation of mineral rights clause could be read as granting BP the mineral rights on state-owned land and water bottoms within the White Lake Property and on any land subsequently acquired by the State as part of the Preserve. In addition to the constitutional challenges to the reservation of mineral rights set forth in the original petition, McPherson further alleged in his amended petition that to the extent that the cooperative endeavor agreement was interpreted to donate to BP any interest in the lake bed of White Lake, it was a violation of and inconsistent with the provisions of Act No. 92 of 1942.[3]
McPherson further contended that to the extent the agreement diverted to BP state income in the form of royalties on state-owned land, such a diversion violated La. Const. art. III, § 16, in that it constituted an expenditure of State funds without an appropriation by the legislature, and it usurped his right as a legislator to vote on all such appropriations. McPherson also contended that the execution of the agreements at issue violated the separation of powers maintained by La. Const. art. II, § 1 in that executive branch officials had usurped and taken over the legislative duty of appropriating and budgeting the expenditures of all state funds. Based on these allegations, McPherson again prayed for relief in the form of a declaratory judgment.
During the pendency of this matter, the LWF, a Louisiana non-profit corporation dedicated to the conservation, protection and proper management of Louisiana wildlife, intervened, contending that it had an interest in the outcome of the suit and seeking the same relief sought by McPherson.
In response to McPherson's amended petition and the LWF's petition of intervention, Governor Foster, Drennan, BP and White Lake Preservation, Inc., in addition to filing other exceptions, filed exceptions of no right of action, contending that McPherson and the LWF lacked standing to pursue the claims alleged. Following a hearing on the exceptions, the *288 trial court maintained the defendants' exceptions of no right of action as to both McPherson and LWF. In reasons for judgment, the trial court found that the amendment to McPherson's original petition had not cured the deficiency of his lack of standing. Specifically, the trial court held that LSA-R.S. 38:2193 confers standing upon the Louisiana Attorney General to bring an action such as this one on behalf of the legislature or its members. The court further found that neither McPherson nor the LWF had demonstrated a real and actual interest in this suit. Accordingly, the trial court rendered judgment, dismissing with prejudice the claims of McPherson and the LWF.
From this judgment, McPherson and the LWF appeal, contending that the trial court erred in finding that they lacked standing to pursue this suit for declaratory judgment.

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
Prior to addressing appellants' contentions herein, we first address the motion to dismiss for lack of subject matter jurisdiction, which was filed by BP for the first time in this court shortly before oral argument in this matter.
Jurisdiction is the legal power and authority of a court to hear and determine an action of the parties and to grant the relief to which they are entitled. LSA-C.C.P. art. 1; Boudreaux v. State, Department of Transportation and Development, XXXX-XXXX, p. 7 (La.2/26/02), 815 So.2d 7, 12. Subject matter jurisdiction is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute or the value of the right asserted. LSA-C.C.P. art. 2; Boudreaux, XXXX-XXXX at p. 7, 815 So.2d at 12. The issue of subject matter jurisdiction addresses the court's authority to adjudicate the cause before it. The issue may be raised at any time and at any stage of an action. Whittenberg v. Whittenberg, 97-1424, p. 2 (La.App. 1st Cir.4/8/98), 710 So.2d 1157, 1158.
In support of its contention that this court lacks subject matter jurisdiction over this matter, BP notes that during the 2004 regular session, the legislature passed Act No. 613, which addressed issues concerning the White Lake Property. BP contends that this Act resolved the controversy which served as the basis for this court's subject matter jurisdiction in that it placed the operation, control and administration of the White Lake Property under the authority of the Department of Wildlife and Fisheries and created a fund within the state treasury for the deposit of all revenues generated by the White Lake Property. Thus, BP contends that "there is no longer a justiciable controversy to support subject matter jurisdiction."
In Abbott v. Parker, 259 La. 279, 249 So.2d 908, 918 (1971), appeal dismissed, 404 U.S. 931, 92 S.Ct. 281, 30 L.Ed.2d 244 (1971), the Louisiana Supreme Court defined "justiciable controversy" in relation to declaratory relief, as follows:
A "justiciable controversy" connotes, in the present sense, an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Further, the [party seeking the declaratory judgment] should have a legally protectable and tangible interest at stake, and the dispute *289 presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
According to Louisiana jurisprudence, an issue is "moot" when a judgment or decree on that issue has been deprived of practical significance or made abstract or purely academic. A case is "moot" when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. Cat's Meow, Inc. v. City of New Orleans, Department of Finance, 98-0601, p. 8 (La.10/20/98), 720 So.2d 1186, 1193.
If the case is moot, then there is no subject matter on which the judgment of the court can operate. That is, jurisdiction, once established, may abate if the case becomes moot. Cat's Meow, Inc., 98-0601 at p. 8, 720 So.2d at 1193. Accordingly, we must first determine whether Act No. 613 of the 2004 regular session has rendered the issues raised by McPherson and LWF moot, thereby depriving this court of subject matter jurisdiction.
Act No. 613 of the 2004 regular session enacted several statutes relating to the management of the White Lake Property. See LSA-R.S. 56:799.1 et seq. (effective 1/1/05). With regard to the right or duty to manage the property, LSA-R.S. 56:799.6(A), effective January 1, 2005, was created to provide that the Department of Wildlife and Fisheries shall administer, control and manage the White Lake Property.[4] The legislature also enacted LSA-R.S. 56:799.6(B), effective January 1, 2005, which provides that the Department of Wildlife and Fisheries may enter into a cooperative endeavor agreement to fulfill its duties and responsibilities, but that each such agreement shall be subject to review by the Joint Legislative Committee on the Budget.
Through Act No. 613, the legislature also enacted LSA-R.S. 56:799.3, which creates, effective January 1, 2005, in the state treasury a special fund within the Louisiana Wildlife and Fisheries Conservation Fund, the White Lake Property Fund. Pursuant to this statute, revenues received by the State from leases and royalty payments from the White Lake Property, fees charged for the use of the White Lake Property, monies received from the sale of assets produced by the White Lake Property and all donations relating to the White Lake Property are to be deposited into the White Lake Property Fund. Section (C) of LSA-R.S. 56:799.3 further provides that the monies in this fund shall be available only for the operation, maintenance, administration, control, management or enhancement of the White Lake Property. Additionally, Section (D) of LSA-R.S. 56:799.3 provides that monies in the fund are to be appropriated by the legislature.
In support of its motion to dismiss for lack of subject matter jurisdiction due to lack of a justiciable controversy, BP contends that Act No. 613 cured all objections *290 raised by McPherson and the LWF regarding the effect of the cooperative endeavor agreement and, thus, that the these issues cannot serve as the basis for subject matter jurisdiction. Regarding the issues raised by McPherson and BP concerning the interpretation of the mineral reservation, BP contends that there has never been any dispute between the State and BP about this provision of the donation which could serve as the basis of subject matter jurisdiction.
At oral argument in this matter, counsel for McPherson contended that even if Act No. 613 solved the issue of management of the White Lake Property, there still remains a justiciable controversy over the interpretation of the mineral reservation. Further, counsel noted that McPherson's request for a declaration that parties to the donation agreement did not have the legal authority to grant mineral rights to BP that were previously owned by the State remains unresolved.
At the outset, we note that the statutes discussed above that were enacted by Act No. 613 have an effective date of January 1, 2005. See La. Acts 2004, No. 613, § 5. Many of the provisions of these statutes appear to be substantive in nature, and there is no language in Act No. 613 purporting to give any of its provisions retroactive effect. Accordingly, the effect that this Act will have on the previously entered-into donation agreement and cooperative endeavor agreement is not resolved by mere reliance upon these new statutory provisions.
As discussed above, the petitions herein allege that the documents entered into by the State and BP provide that the White Lake Property will be administered by White Lake Preservation, Inc., a non-profit corporation with no apparent accountability to the Louisiana Department of Wildlife and Fisheries. Additionally, the petitions allege that the previously confected cooperative endeavor agreement was not submitted to the legislature for approval, while LSA-R.S. 56:799.6(B) enacted by Act No. 613 would require review by the Joint Legislative Committee on the Budget of any cooperative endeavor agreements entered into after the effective date of that statute.
While BP contends that the issues of management of the White Lake Property have now been resolved, we note that BP does not suggest in its motion that the cooperative endeavor agreement is now subject to LSA-R.S. 56:799.6(B) and will be submitted to this legislative committee for review or that the previously confected cooperative endeavor agreement is now void to the extent that it conflicts with other provisions of Act No. 613.
McPherson's and the LWF's contentions in their pleadings are that these documents were improperly entered into and are invalid under various constitutional provisions in effect at the time of the confection of the documents at issue. Additionally, with regard to McPherson's and the LWF's challenges to the mineral reservation clause in the donation agreement, BP does not suggest that Act No. 613 in any way resolved this conflict. Rather, BP suggests that such a challenge could only be brought by the parties to the contract itself. Thus, BP contends that because there has never been a dispute between the State and BP about the interpretation of the mineral reservation clause, this court lacks subject matter jurisdiction over that claim. However, we conclude that this argument is more appropriately addressed under the issue of whether McPherson and the LWF are parties with standing to raise this dispute, which relates to the merits of the appeal herein.
*291 Accordingly, we find no merit to BP's argument that the enactment of Act No. 613 has resolved all issues raised by appellants' petitions, such that this court would now lack subject matter jurisdiction over the appeal. Thus, the motion to dismiss for lack of subject matter jurisdiction is denied at appellee's costs.

STANDING
We now turn to McPherson's and BP's challenge to the trial court's ruling that they lacked standing to challenge certain provisions of the donation agreement and cooperative endeavor agreement entered into by the State and BP. The peremptory exception of no right of action tests whether the particular plaintiff falls, as a matter of law, within the particular class to which the law grants a remedy for the particular harm alleged. LSA-C.C.P. art. 927(A)(5); Family Resource Group, Inc. v. Louisiana Parent Magazine, XXXX-XXXX, p. 6 (La.App. 1st Cir.11/9/01), 818 So.2d 28, 32. This objection is a threshold device to terminate a suit brought by one who has no interest in enforcing judicially the right asserted. Family Resource Group, Inc., XXXX-XXXX at pp. 6-7, 818 So.2d at 32. To prevail, the defendant must demonstrate that the plaintiff does not possess an interest in the subject matter of the suit or legal capacity to proceed with the suit. Jackson v. St. Helena Parish Sheriff's Department, 2001-2792, p. 2 (La.App. 1st Cir.11/8/02), 835 So.2d 842, 844.
Louisiana Code of Civil Procedure article 931 permits the introduction of evidence to support or controvert an exception of no right of action. Family Resource Group, Inc., XXXX-XXXX at p. 7, 818 So.2d at 32. Whether a plaintiff has a right of action is a question of law; therefore, it is reviewed de novo on appeal. Jackson, 2001-2792 at p. 2, 835 So.2d at 844. Applying this standard, we will address the issue of standing as to McPherson and LWF separately.

Standing of Senator McPherson
In concluding that McPherson lacked standing to assert the claims set forth in his original and amending petitions, the trial court ruled that LSA-R.S. 38:2193 requires that any action such as the one in question be brought through the Louisiana Attorney General's office on behalf of the legislature or its members. Thus, the court concluded that LSA-R.S. 38:2193 was an expression of the legislature as to who actually has standing to bring an action such as this one. Additionally, the court concluded that through his petitions, McPherson was actually seeking to compel action, rather than simply seeking declaratory judgment, and that he had not demonstrated that he had a real and actual interest entitling him to pursue these claims.
Louisiana Revised Statute 38:2193(A) provides in pertinent part, as follows:
[I]n any case in which the legislature, or any of its members has reason to believe that any contract of the state or any political subdivision may violate the provisions of Article VII, Section 14, the legislature or the member thereof, as the case may be, shall submit the pertinent facts to the attorney general. Upon submission of such pertinent facts by ... the legislature, or its members, the attorney general shall institute a civil proceeding to invalidate the contract, if in his opinion such a proceeding is necessary for the assertion or protection of any right or interest of the state or political subdivision within the intendment of Article VII, Section 14 of the Louisiana Constitution of 1974. If in his opinion such a proceeding is not necessary, he shall submit in writing such *292 opinion and his reasons therefor to the official or body which submitted such facts to him.
Section (B) of LSA-R.S. 38:2193 further provides that the attorney general, on his own initiative, shall institute a proceeding to invalidate a contract if in his opinion such a proceeding is necessary to protect any right or interest of the State due to a violation of La. Const. art. VII, § 14.[5]
While this statute clearly places a duty upon the attorney general to pursue a claim on behalf of the State to invalidate a contract that allegedly violates La. Const. art. VII, § 14, the wording of this statute in no way limits the right to bring such an action to only the attorney general. Additionally, we note that McPherson alleged several constitutional violations in his pleadings, not merely a violation of article VII, section 14, which is the only constitutional provision to which LSA-R.S. 38:2193 is applicable. Accordingly, we conclude that LSA-R.S. 38:2193 cannot serve as a basis for maintaining defendants' exceptions of no right of action as to McPherson.
In the instant matter, McPherson has alleged, among other things, that he has standing as a taxpayer and a Louisiana senator. The foundation of our standing requirement is LSA-C.C.P. art. 681, which provides that "[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts." Ordinarily, without a showing of some special interest in the performance of a public entity which is separate and distinct from the public at large, a plaintiff will not be permitted to proceed. However, a well established exception to this rule exists in the case of taxpayer suits. Citizen Committee for Better Law Enforcement v. City of Lafayette, 95-1630, p. 3 (La.App. 3rd Cir.11/20/96), 685 So.2d 289, 291, writ denied, 96-3087 (La.2/7/97), 688 So.2d 507.
A taxpayer seeking mandamus to compel the performance of a duty by a public board, officer or commission must establish an interest in the litigation peculiar to him personally and separate and distinct from that of the general public. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1358 (La.1991). However, a taxpayer has standing to enjoin unlawful action by a public body upon a showing of an increase in the burden of taxation or unjust effect on his property, however small or insusceptible of accurate determination the taxpayer's interest may be. Louisiana Associated General Contractors, Inc., 586 So.2d at 1357-1358. Moreover, courts have held that to show standing in a declaratory judgment action, a Louisiana taxpayer need only show an effect upon the public fisc by the government action in question. Hudson v. City of Bossier, 36,213, p. 6 (La.App. 2nd Cir.8/14/02), 823 So.2d 1085, 1089, writ denied, 2002-2383 (La.11/27/02), 831 So.2d 279, and Upper Audubon Association v. Audubon Park Commission, 329 So.2d 206, 207 (La.App. 4th Cir.), writ denied, 333 So.2d 240 (La.1976); see also Roy v. Avoyelles Parish School Board, 552 So.2d 63, 64 (La.App. 3rd Cir.1989) (plaintiff has right of action to restrain action by a public entity that affects the public fisc).
In the instant case, McPherson has alleged that to the extent the documents at issue can be interpreted as granting BP the mineral rights on state-owned land and water bottoms, the effect of the agreements would be an unconstitutional *293 donation of public property. Moreover, McPherson has further alleged that to the extent the agreements diverted to BP state income in the form of royalties on state-owned land, such diversion constitutes an unconstitutional expenditure of state funds without an appropriation. These allegations, if proven, would clearly have a detrimental effect upon the public fisc. Accordingly, McPherson's right to bring an action challenging the validity of these agreements is firmly established in the jurisprudence, and the trial court erred in denying him that right.[6]
Additionally, aside from his standing as a taxpayer, we conclude that McPherson also established his standing to bring this declaratory judgment action as a legislator. With regard to standing to bring a declaratory judgment suit, LSA-C.C.P. art. 1872 provides, in pertinent part, that "[a] person interested... whose rights, status, or other legal relations are affected by a ... contract ... may have any question of construction or validity arising under the instrument, ... contract ... and obtain a declaration of rights, status, or other legal relations thereunder."
In his petitions, McPherson specifically alleged that his rights as a legislator had been usurped by the agreements entered into by BP and the State. Specifically, McPherson alleged that as a Louisiana senator, he serves on the Senate Committee on the Environment, which considers and holds public hearings on bills impacting the environment. Accordingly, he contended that if legislation had been submitted to the legislature to authorize or implement the White Lake agreements at issue, McPherson would have had the opportunity to attend the committee hearing, to question witnesses, and to vote on any recommendations reaching the Senate floor.
McPherson further contended that the agreements had usurped his authority as a legislator by: implementing changes in the way the State leases mineral rights, making changes to the way the State grants mineral leases, reorganizing the functions of executive branch agencies, creating an unauthorized state agency, and removing the unauthorized agency from legislative budgetary control without implementing legislation to authorize the changes. Additionally, with regard to the contentions that the agreements may have granted BP the mineral rights on state-owned land and water bottoms and diverted to BP state income in the form of royalties on state-owned land, McPherson averred that, through the execution of the agreements, executive branch officials had usurped the legislative duty of appropriating and budgeting the expenditures of the State.
Thus, inasmuch as McPherson has alleged that his authority and duty as a Louisiana legislator has been usurped by the execution of these agreements, he has a personal interest in this litigation and, accordingly, a right of action herein. See Bruneau v. Edwards, 517 So.2d 818, 822 (La.App. 1st Cir.1987).
Considering the foregoing, we conclude that the trial court erred in maintaining the exceptions of no right of action as to McPherson and in dismissing his claims.

Standing of the LWF
In maintaining the exceptions of no right of action as to the LWF, the trial court *294 found that while the LWF may have an interest in the protection and preservation of wildlife in this state, that interest did not rise to the level necessary to constitute a real and actual interest as required by LSA-C.C.P. art. 681.
An association will have standing to bring a suit on behalf of its members where: (1) the members would otherwise be able to bring the suit in their own right, (2) the interests the association seeks to protect are pertinent to its purpose, and (3) neither the claim asserted by the association nor the relief sought requires the participation of individual members in the lawsuit. Ramsey River Road Property Owners Association, Inc. v. Reeves, 396 So.2d 873, 874 (La.1981).
In its petition for intervention, the LWF contended that its members, more than 13,000 Louisiana citizens, are dedicated to the conservation, protection and proper management of Louisiana wildlife. Thus, the LWF contended that it has a particular interest in maintaining the protection of Louisiana's natural resources.
In considering whether the LWF has a right of action herein, we must first determine whether its individual members of the LWF could have instituted this suit in their individual capacities. In conducting this analysis, we note that the LWF has not asserted a right to pursue this action based on its members' status as taxpayers. Thus, we must determine whether the individual members would have had standing to pursue this claim based on their individual interests in the conservation, protection and proper management of Louisiana wildlife. Under these limited allegations, we must conclude that the individuals members of the LWF do not have a real and actual interest in the outcome of this litigation peculiar to them personally and separate and distinct from that of the general public. See Neighborhood Action Committee v. State, 94-0807, pp. 6-8 (La.App. 1st Cir.3/3/95), 652 So.2d 693, 696-698, writ denied, 95-0862 (La.5/12/95), 654 So.2d 352.
Accordingly, we find no error in the trial court's ruling maintaining the exceptions of no right of action as to the LWF. Nonetheless, we note that pursuant to LSA-C.C.P. art. 934, a party is entitled to the opportunity to remove the grounds for the exception by amending its pleadings before the trial court can dismiss the claim with prejudice. Thus, we conclude that the trial court erred in dismissing the LWF's petition for intervention with prejudice without allowing the LWF the opportunity to amend its pleadings.

CONCLUSION
For the above and foregoing reasons, the motion to dismiss for lack of subject matter jurisdiction filed in this court by BP is denied. The portion of the August 21, 2003 judgment maintaining defendants' exceptions of no right of action as to the original and amending petitions of McPherson and dismissing his demands with prejudice is reversed. The portion of the judgment maintaining defendants' exceptions of no right of action as to the petition of intervention of the LWF is affirmed. However, the portion of the judgment dismissing the LWF's petition of intervention with prejudice is reversed. This matter is remanded to the trial court so that it may allow the LWF a reasonable time within which to amend its petition of intervention, if it can, in order to establish a right of action herein, and for further proceedings in this matter. See Caesar v. New Orleans Police Department, 99-0710, p. 6 (La.App. 4th Cir.11/10/99), 746 So.2d 803, 809. Costs of this appeal in the amount of $3,013.40 are assessed equally against BP America Production Company; *295 White Lake Preservation, Inc.; Murphy J. Foster, in his capacity as Governor of the State of Louisiana; and Mark Drennan, in his capacity as Commissioner of the State of Louisiana.
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION DENIED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
FITZSIMMONS, J., concurs in part, dissents in part, and assigns reasons.
FITZSIMMONS, Judge, concurring and dissenting, in part, with reasons.
I respectfully dissent from that part of the decision that grants Senator McPherson standing in his capacity as a legislator. As the majority recognizes, there is well-established case law that allows Senator McPherson, in his capacity as a taxpayer, to bring the suit for declaratory judgment and to restrain the public body from doing something even though the taxpayer's interest may be "small and insusceptible of accurate determination." Louisiana Associated General Contractors v. Calcasieu Parish School Board, 586 So.2d 1354, 1357-1358 (La.1991) (citing Stewart v. Stanley, 199 La. 146, 5 So.2d 531 (1941)).
Conversely, it is axiomatic that when two statutory provisions are in conflict, the specific statute, i.e., La. R.S. 38:2193A, prevails and trumps the more general standing article. Medine v. Roniger, XXXX-XXXX, pp. 11-12 (La.7/2/04), 879 So.2d 706, 714. Louisiana revised statute 38:2193A expressly restricts legislators from bringing individual suits in their official capacities in instances involving alleged violations of La. Const. Art. VII § 14. The clearly stated verbiage, `shall' in La. R.S. 38:2193A requires Senator McPherson to proceed via the attorney general to address any and all purportedly prohibited donations of property by the state. The case cited in the majority decision, Bruneau v. Edwards, 517 So.2d 818 (La.App. 1st Cir.1987), distinguishably involved the withholding of appropriations and transfer of dedicated funds to the state general fund, as opposed to loans, pledges or donations by the state.
Moreover, if each legislator were authorized to sue in his or her official capacity, every legislator who voted against a bill could stymie the legislative process by simply suing as a legislator to prevent the enforcement of the bill's enactment. In this regard, I submit that the holding in Bruneau v. Edwards, 517 So.2d 818 (La.App. 1st Cir.1987), wherein this court previously deemed that legislators have a right of action to attack the constitutionality of an action, should be overruled.
In all other respects, I concur in the result.
NOTES
[1] In his petition, McPherson noted that La. Const. art. IX, § 1 provides that the natural resources of the State shall be protected, conserved and replenished and that the legislature shall enact laws to implement this policy. He contended in his petition that the legislature, in furtherance of this obligation, had, by statute, delegated to the Department of Wildlife and Fisheries the supervision and control of all wildlife of the state and the beds and bottoms of rivers, streams, bayous, lagoons, lakes and bays within the territory or jurisdiction of the state.
[2] McPherson acknowledged in his petition that La. Const. art. VII, § 14 provides for cooperative endeavor agreements between the State and a public, private or individual association or corporation. However, he contended that this provision does not authorize a cooperative endeavor agreement in the absence of legislative authorization and that it does not authorize agreements that violate or are contrary to other provisions of the Constitution.
[3] In 1942, the Louisiana legislature enacted Act No. 92 as a result of a title dispute between the State and a corporation entitled "Acadia-Vermilion Rice Irrigating Company, Inc." ("Acadia-Vermilion") as to the bed of White Lake in Vermilion Parish. Specifically, Acadia-Vermilion asserted title to 35,000 acres or more of land within the bed of White Lake. This title dispute, as acknowledged in the Act, had made it difficult if not impossible to pursue oil, gas and mineral exploration in White Lake.

Accordingly, Act No. 92 was enacted to authorize the State Mineral Board to execute an oil, gas and mineral lease, on behalf of the State as lessor, covering the entirety of the beds and bottoms of White Lake, provided that the lessee would also obtain from Acadia-Vermilion an oil, gas and mineral lease covering all of the right, title, interest and claim of Acadia-Vermilion to the bed of White Lake. The lessee would be further required to pay additional royalties to Acadia-Vermilion, but less than those stipulated to be paid to the State.
Thus, in essence, because of the title dispute between the State and Acadia-Vermilion, any oil, gas and mineral lessee was required to obtain mineral leases from both the State and Acadia-Vermilion and to pay royalties to both. Act No. 92 further provided that the provisions of the Act did not have any effect on the rights or claims of the State, Acadia-Vermilion or any other party to the title to White Lake or their rights to assert such title. La. Acts 1942, No. 92, § 4.
[4] Additionally, LSA-R.S. 56:799.4 was enacted, also with an effective date of January 1, 2005, to create the White Lake Advisory Board within the Department of Wildlife and Fisheries. This statute further provides that the advisory board shall be composed of members appointed by the governor, subject to confirmation by the Senate. LSA-R.S. 56:799.4(B). Pursuant to section (K) of newly-enacted LSA-R.S. 56:799.4, the advisory board shall advise the Wildlife and Fisheries Commission and the Department of Wildlife and Fisheries regarding the administration, control and management of the White Lake Property. The legislature, through Act No. 613, also enacted LSA-R.S. 56:799.5, also effective January 1, 2005, which charged the Louisiana Wildlife and Fisheries Commission with the duty of establishing a conservation management plan for the White Lake Property.
[5] Article VII, section 14 of the Louisiana Constitution prohibits the State from loaning, pledging or donating to any person, association or corporation any funds or property belonging to the State.
[6] We reject the assertion that McPherson, through his original and amending petitions for declaratory judgment, was in fact seeking to compel action of a public official. McPherson's prayer for relief sought declaratory judgment with regard to the validity and effect of the transactions at issue.