Dear Ms. Amrhein:
You have requested the opinion of this office concerning the exercise of the Governor's interim budget-balancing powers to reduce the appropriation made for the Taylor Opportunity Program for Students ("TOPS"), specifically asking three questions:
(1) Whether Executive Order BJ 2009-21 provides a legal basis to reduce the 2009 TOPS appropriation in light of the appropriation being "more or less estimated;"
(2) If the Executive Order does allow reduction of the TOPS appropriation, whether the provisions of La.R.S. 17:3048.1(N) would be applicable; and
(3) If the Executive Order does allow reduction of the TOPS appropriation, but the provisions of La.R.S. 17:3048.1(N) are not applicable, what method(s) of applying the reduced appropriation to eligible students would be lawful?
The TOPS program awards merit-based scholarships to students meeting certain criteria set forth in La.R.S. 17:3048.1. The program is administered by the Office of Student Financial Aid ("OSFA"). We understand that every dollar of the TOPS appropriation is spent on actual scholarship awards to students, and that the administrative costs of operating the TOPS program are paid from a different appropriation. For the 2009-10 fiscal year the legislature appropriated $129,868,148.00 to the TOPS Tuition program, with the following proviso:
Provided, however, that the State General Fund (Direct) and TOPS Fund appropriated herein for the Tuition Opportunity Program for Students (TOPS), associated expenditures and the number of TOPS awards are more or less estimated. *Page 2 
Acts 1999, No. 10, pp. 226-27.
On December 22, 2009 Governor Jindal signed Executive Order No. BJ 2009-21 ("Order"), invoking his interim budget-balancing powers under La.R.S. 39:75(C). The Order reduced the appropriations for certain departments, agencies and budget units (collectively "units") by specific amounts. The units were further directed to submit mid-year budget reduction plans to the Commissioner of Administration ("Commissioner") by January 8, 2009. The reduction of the appropriation for Higher Education was $83,961,506.00. The TOPS appropriation is a component of the appropriations to Higher Education.
The governor's interim budget-balancing powers ultimately derive from Article VII, Section 10 of the Louisiana Constitution of 1974. Paragraph F of that Section directs the legislature to enact a law to determine if a deficit will occur and to adjust appropriations in order to address such deficit:
The legislature by law shall establish a procedure to determine if appropriations will exceed the official forecast and an adequate method for adjusting appropriations in order to eliminate a projected deficit.
La.Const. art. VII, § 10(F). The section further provides that any law so enacted "shall not be changed except by specific legislative instrument which receives a favorable vote of two-thirds of the elected members of each house of the legislature."Id.
The legislature satisfied the aforementioned constitutional mandate by enacting La.R.S. 39:75, which sets forth the method for adjusting appropriations to avoid a deficit. La.R.S. 39:75. The legislature granted the governor certain interim budget-balancing powers once the Joint Legislative Committee on the Budget notifies the governor of a projected deficit:
§ 75. Avoidance of budget deficits
* * * *
C. Upon receiving notification that a projected deficit exists, the governor shall have interim budget balancing powers to adjust the budget in accordance with the following provisions:
(1)(a) The governor may direct the commissioner of administration to reduce appropriations for the executive branch of government for any program that is appropriated from a fund that is in a deficit posture. . . . *Page 3 
ld. The legislature's delegation of its power over appropriations for the limited purpose of mid-year budget-balancing — a uniquely legislative function — is a valid fulfillment of the mandate of Article VII, Section 10(F) of the Louisiana Constitution. Bruneau v. Edwards,517 So.2d 818 (La.App. 1 Cir. 1987).
The issue raised in your first question is whether the governor has the authority to reduce the TOPS appropriation in light of the fact that the appropriation is "more or less estimated." There is no statutory definition or jurisprudential interpretation of the phrase "more or less estimated" as used in the appropriations bill. In two different opinions this office has observed that the inclusion of the phrase "more or less estimated" in an appropriation is the legislature's authorization for the expenditure of the actual amount necessary to satisfy the purpose for which the appropriation is made. La.Atty.Gen.Op. Nos. 01-296, 94-548. In practice, the "more or less estimated" proviso authorizes the treasurer to pay the actual amount of all TOPS awards, whether they fall short of, or exceed, the specific dollar amount of the TOPS appropriation set forth in the general appropriations bill, Acts 2009, No. 10.
By the plain terms of La.R.S. 39:75, the governor may order the reduction of appropriations for "for any program that is appropriated from a fund that is in a deficit posture." The appropriation to the TOPS program is partially funded from the State General Fund, which fund was found to be in a deficit posture by the Division of Administration. Acts 2009, No. 10, pp. 226-27; Exec.Order No. BJ 2009-21. The TOPS appropriation therefore appears to be eligible for reduction by the governor according to the terms of La.R.S. 39:75(C).
Louisiana Revised Statutes 39:75(C) does identify two appropriations that are exempt from the governor's unilateral power to reduce appropriations. Section 75(C)(1)(b) protects the appropriation for the Minimum Foundation Program by requiring approval of any reduction by two-thirds of each house of the legislature. Section 75(C)(1)(c) protects the appropriations to certain elementary and secondary schools by requiring approval of such reductions by the Joint Legislative Committee on the budget. If the legislature had intended to exempt "more or less estimated" appropriations in general, or TOPS appropriations specifically, it would have included the exemption in the statute.
Furthermore, recall that La.R.S. 39:75 "shall not be changed except by . . . a favorable vote of two-thirds of the elected members of each house of the legislature." La.Const. art. VII, § 10(F). If we were to recognize the legislature's designation of the TOPS appropriation as `more or less estimated" to exempt the appropriation from mid-year budget reductions under La.R.S. 39:75(C), we would be advocating a defacto amendment to La.R.S. 39:75 without the required two-thirds supermajority. *Page 4 
In summary, we can find no statutory or jurisprudential authority for exclusion of a "more or less estimated" appropriation from the reach of La.R.S. 39:75(C). This office is therefore of the opinion that Executive Order BJ 2009-21 does provide a legal basis to reduce the 2009 TOPS appropriation despite the appropriation being "more or less estimated."
Turning to your second question, the issue is whether the provisions of La.R.S. 17:3048.1(N) would be applicable if the Order does allow reduction of the TOPS appropriation. La.R.S. 17:3048.1(N) provides the method for scaling back TOPS awards if the legislature does not appropriate sufficient money to fund all awards.[1] The provision is triggered "[i]n the event the legislature appropriates insufficient money to fund all awards made to students qualifying under the provision of this Section. . . ." La.R.S. 17:3048.1(N)(1). The issue is whether paragraph (N) applies when the TOPS appropriation is reduced by an executive order of the governor, rather than by an act of the legislature. *Page 5 
The power to appropriate funds rests with the legislature by virtue of Article III, Section 16 of the Louisiana Constitution.See also Hoag v. State, 2004-0857 (La. 12/1/04),889 So.2d 1019. Louisiana Revised Statutes 39:75(C) is a constitutionally permissible delegation of the legislature's exclusive power over appropriations for the limited purpose of eliminating a deficit. Bruneau, supra. Because the governor's reduction of the TOPS appropriation would be done by virtue of the legislature's delegation of authority, the resulting appropriation can fairly be ascribed to the legislature. This office is therefore of the opinion that a reduction in the TOPS appropriation made by an executive order of the governor pursuant to his legislatively-delegated power over appropriations would trigger the procedures set forth in La.R.S. 17:3048.1(N).
We note, however, that due process considerations of the 14th Amendment to the United States Constitution and Article I, Section 2 of the Louisiana Constitution limit the state's authority to retroactively invoke the award-reduction procedures of La.R.S. 17:3048.1 (N) and revoke any TOPS awards already made to individual recipients.
"Retroactive application of new legislation is constitutionally permissible only if it does not result in impairment of the obligation of contracts or in divestiture of vested rights."
Mortal v. Smith Wesson Corporation, 2000-1132 (La. 4/3/01), 785 So.2d 1,10, citing 2 A.N. Yiannopoulos, Louisiana Civil Law Treatise, § 10 (3d. ed. 1991); see also Segura v.Frank, 93-1271 (La. 1/14/94),630 So.2d 714, 721 ("[T]he law may not be applied retroactively if it would impair contractual obligations or disturb vested rights.") It follows that the governor cannot exercise his legislatively-delegated powers to divest students of TOPS awards if those students have vested property rights in their awards.
The United States Supreme Court discussed the nature of vested rights in Board of Regents of State Colleges v. Roth,408 U.S. 564 (1972). Neither the state nor the federal constitutions establish an individual's property rights; those rights "are defined by existing rules or understandings that stem from an independent source such as state law." Id. at 577. The Roth court explained the nature of a property right in the following passage:
To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. *Page 6 
Id. at 577.
The question of whether a student has a vested right in his or her TOPS award depends on whether he or she has a "legitimate claim of entitlement" to the award under the TOPS statute, La.R.S. 17:3048.1, and regulations promulgated by OSFA. Id. While a qualifying student is eligible to receive a TOPS award for eight semesters (or twelve terms as applicable), he or she is not automatically entitled to the award for each semester. In order to maintain the award from semester to semester, the student must achieve certain enrollment, credit hour, and grade point average benchmarks at the institution he or she is attending.[2]
Whether a student's right to maintain his or her TOPS award for an upcoming semester or term has become a vested property right at the time that the governor seeks to reduce the TOPS appropriation will differ for each student. The answer will depend on an individualized determination based on the student's performance, the requirements for maintaining the award, the institution's academic calendar, and the timing of the contemplated decrease in appropriation. Such a determination would have to be made for each student whose award might be affected by a reduction in the appropriation.
We understand that at the time Governor Jindal issued the Order, OSFA had already notified most students attending semester-based institutions whether or not they had maintained their TOPS awards for the spring semester. We also understand that some institutions had already sent TOPS-eligible students a statement of their tuition and fees (sometimes known as a "fee bill") for the spring semester crediting the amount of their TOPS awards for the spring semester toward the tuition and/or fees payable to the institution. In our opinion, it appears that a TOPS-eligible student who had received such notice from OSFA, and who had received a tuition statement from his or her institution reflecting the TOPS award, would have a vested right in their TOPS award for the spring semester. Under these particular facts, the governor's executive order cannot be implemented in such a manner that would deprive the student of his or her TOPS award for the spring semester. *Page 7 
In light of our opinion that a reduction in the TOPS appropriation made by an executive order of the governor triggers the award-reduction procedures set forth in La.R.S. 17:3048.1(N), but that, for due process considerations, no award already made can be reduced or revoked, there is no need to address your third question.
We trust that this opinion adequately responds to your request, and thank you for the opportunity to be of service. If you have any questions or comments, please do not hesitate to contact our office.
Sincerely yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
BY:__________________________ Charles W. Belsom, Jr. Assistant Attorney General
JDC:CWB:lrs
[1] Louisina Revised Statutes 17:3048.1(N) reads in full as follows:
N. (1) In the event the legislature appropriates insufficient money to fund all awards made to students qualifying under the provisions of this Section, the number of students to whom awards shall be made shall be reduced as necessary pursuant to a procedure set out by rule adopted by the administering agency. The procedure shall provide for such reduction to be based on the scores on the American College Test and then on the ability of each student's family to pay the student's tuition as evidenced by the expected family contribution determined by using the standardized federal methodology for establishing student financial need. The procedure shall provide that reductions of awards made necessary by insufficient appropriations shall first eliminate the cohort of students who score lowest on the American College Test. The procedures shall provide that within that cohort of students, those whose families are most able to pay the student's tuition shall be eliminated first. After insufficient appropriations require the elimination of all students in such cohort, the procedures shall require repeating the process with those students in the next highest score cohort.
(2) Among students denied their awards as provided in this Subsection, those students whose families have the least capacity to pay shall be the first to receive their awards if monies become available. Any student for whom the expected family contribution cannot be determined as provided for in Paragraph (1) of this Subsection shall be denied his award until the legislature appropriates sufficient monies to fund all awards made to students qualifying under the provisions of this Section.
La.R.S. 17:3048.1(N).
[2] In order to maintain a TOPS Opportunity award, for example, according to La.R.S. 17:3048.1 and rules adopted by OSFA, a student must achieve the following:
1. Remain continuously enrolled as a full-time student (except for summer terms) and earn twenty four (24) credit hours during each Academic Year;
2. Maintain Steady Academic Progress, defined as a cumulative 2.00 grade point average on a 4.00 scale, at the end of each semester;
3. Meet the respective minimum Cumulative Grade Point Average at the end of each spring semester or term.